GLINES ET AL., APELADOS, v. MATTA ET AL., APELANTES.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª.

No. 890.—Resuelto en abril 23, 1913.

TRASLADO DE UN PLEITO—INJUNCTION—SERVIDUMBRE—INTERÉS EN UNA PROPIEDAD.—La acción de *injunction* ejercitada por los demandantes implica la determinación de un interés en la propiedad en litigio, muy parecido a una servidumbre y por tanto esta acción radica en el distrito judicial de San Juan, en donde está situada la propiedad en litigio y no procede su traslado al distrito judicial de Humacao aun cuando los demandados son residentes y fueron citados en este último distrito.

CONTRATOS—RESTRICCIONES RELATIVAS A LA CONSTRUCCIÓN DE CASAS—OBLIGACIONES DE COMPRADORES POSTERIORES.—Cuando una asociación cooperativa de construcción acuerda ciertas restricciones con respecto a la construcción de edificios, en una finca que ha de ser dividida en solares y se hace constar dichas restricciones en la inscripción de la totalidad de la finca en el registro de la propiedad y se mencionan esas restricciones en las subsiguientes escrituras, todos los que posteriormente compran solares están obligados a respetarlas, aun cuando en el traspaso a ellos no contratan específicamente acerca de dichas restricciones.

INJUNCTION—SOLARES SUJETOS A RESTRICCIONES DE CONSTRUCCIÓN—ACCIÓN DE LOS DUEÑOS PARA HACERLAS RESPETAR.—Los dueños de solares procedentes de una finca que ha sido urbanizada afecta toda ella a ciertas restricciones en la construcción de casas que constan en la inscripción de dicha finca en el registro de la propiedad, pueden ejercitar la acción de *injunction* para impedir que algunos dueños infrinjan dichas restricciones.

ID.—JURISDICCIÓN DE EQUIDAD EN PUERTO RICO.—Aun cuando las cortes de Puerto Rico no tienen jurisdicción en materias de equidad en el sentido en que se aplica ésta en las cortes de Inglaterra y de los Estados Unidos, sin embargo, la legislatura al adoptar la ley de *injunction* adoptó una parte limitada de los principios de equidad aplicables a *injunction* vigentes en los Estados Unidos.

CONTRATOS—RESTRICCIONES SOBRE LA PROPIEDAD.—Las cortes deben hacer cumplir las restricciones impuestas a una propiedad siempre y cuando no sean contrarias a las leyes ni causen verdaderos perjuicios.

ID. — DISOLUCIÓN DE UNA ASOCIACIÓN — RESTRICCIONES SOBRE LAS CONSTRUCCIONES.—La disolución de la asociación que era dueña del solar objeto de este pleito no tiene el alcance de dejar sin efecto las restricciones impuestas a todos los solares de dicha asociación relativas a las construcciones sobre los mismos, y la orden ordenando la venta de sus solares libres de carga y gravamen no tuvo por objeto anular dichas restricciones, ni hubiera podido la corte anularlas en una orden de esta naturaleza, sin oir a los dueños de todos los solares.

INJUNCTION—INFRACCIONES LEVES DE LAS RESTRICCIONES SOBRE CONSTRUCCIO-
NES.—Las infracciones cometidas por los demandantes de las restricciones
sobre construcción de edificios en los solares en cuestión, carecen de impor-
tancia y no constituyen una infracción abierta y manifiesta de las mismas
que les impidiera solicitar el recurso de *injunction* objeto de esta acción.

ID.—DEMORA EN SOLICITAR UN INJUNCTION—CONDUCTA DEL DEMANDADO.—Cuando
se presenta una demanda de *injunction* dentro de 20 días después de haber
sido notificada una parte de que estaba infringiendo las restricciones impues-
tas a su solar relativas a la construcción de edificios y a pesar de esta noti-
ficación dicha parte continúa construyendo, no puede alegarse que los deman-
dantes hayan incurrido en demora.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Aponte y Aponte.*

Abogados de los apelados: *Sres. Joseph Anderson, Jr., y Damián Monserrat, Jr.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Hacia el año 1903 se constituyó una compañía denominada *Asociación Popular Cooperativa de Construcciones, Ahorros y Préstamos de Puerto Rico,* que compró una gran extensión de terreno en la parte de Santurce conocida por "Miramar," siendo el principal fin de dicha compañía el de proceder a su urbanización en solares para ponerlo en condiciones de que se fabricasen casas de vivienda, quedando dichos solares suje-
tos a ciertas estipulaciones a las cuales debían someterse los compradores de los mismos. En la sesión celebrada por la compañía el día 28 de abril de dicho año, se acordó que cual-
quiera que fuera el comprador de un solar, debía sujetarse y quedaba obligado para con dicha asociación a la responsabili-
dad de las construcciones y obras de calles, aceras, alcantari-
llados y cañería de agua a prorrata del costo de ellas, las cuales serían llevadas a cabo por la expresada compañía, siempre que los adquirentes de los solares situados en una misma calle lo solicitaran, o antes sin este requisito si así la compañía lo estimaba oportuno.

También pasó la dicha compañía el siguiente acuerdo, a saber: Ningún edificio, construcción, balcón, ventana salediza u otra edificación, excepto escalones o gradas, se harán en

estos solares a menos de tres metros de distancia de la línea de su frente que da a la calle en que se encuentra situado.

La compañía consignó este acuerdo en una escritura, la que inscribió en el registro de la propiedad, y como cada solar había de ser inscrito en el registro, hizo mención a dicho acuerdo como emanado e impuesto por la aludida compañía. Algunos solares fueron luego vendidos por la compañía haciéndose dicha referencia, pero sin ninguna cláusula restrictiva especial, y otros se vendieron con la condición de someterse al plan acordado, siguiendo esto así hasta que debido al pleito que uno de los accionistas entabló contra la compañía, se ordenó su disolución por el tribunal, decretándose la venta de todos los solares sin carga o gravamen alguno, y entre los últimamente vendidos en tal forma, se encontraba el número 137, que ha dado origen a este litigio.

Este solar fué vendido en pública subasta y adjudicado a "Sucesores de A. Mayol y Cía." quienes lo traspasaron a Francisco del Valle, Jr., y éste a su vez a Doña Concepción Matta como libre de todo gravamen, pero sujeto a la obligación o servidumbre a que hemos hecho referencia y sujeto además a la obligación de contribuir a prorrata en las mejoras de las calles, alcantarillado, etc. La escritura o convenio condicional que consta en la escritura otorgada a Doña Concepción Matta, por vía de aclaración y como parte de la descripción, era una condición específica contenida en la escritura que fué otorgada a Don Francisco del Valle, Jr., predecesor inmediato en derecho y aparece como un gravamen o carga impuesta sobre la finca en los correspondientes archivos del registro de la propiedad.

Los demandados y apelantes en este caso son Concepción Matta y Miguel Zalduondo. Ambos residen en Fajardo y cada uno de ellos fué emplazado en este caso en el Distrito Judicial de Humacao, del que Fajardo forma parte.

Allá por el día tres de agosto de 1911, Miguel Zalduondo como apoderado de la señora Concepción Matta, solicitó del Municipio de San Juan un permiso para construir cierto edi-

ficio de concreto en el solar arriba descrito, de la propiedad de su mandataria, cuyo permiso le fué concedido. Entonces los demandados, haciendo uso de sus distintas capacidades, comenzaron la construcción de dos garages en dicho solar, levantando los mismos sobre la línea que sirve precisamente de límite Norte de dicho solar. Que al empezar la construcción el demandado Zalduondo fué notificado por uno o más de los demandantes por medio de sus agentes, de que dicha construcción se llevaba a cabo con infracción de la cláusula restrictiva del contrato, o sea aquélla a que hemos hecho referencia. La edificación siguió, sin embargo, y prácticamente había quedado terminada al presentar los demandantes su demanda. Los demandados formularon excepción previa a dicha demanda presentando a la vez una moción en debida forma para que el caso fuese trasladado a la Corte de Distrito de Humacao, en cuyo distrito residen ambos demandados. La corte declaró sin lugar tanto la excepción previa como la moción de traslado.

Los demandantes son los dueños o residentes de los solares contiguos o adyacentes y alegaron que el contrato había sido infringido por los demandados, cuyos demandantes después de formulada la contestación y celebrado el juicio, obtuvieron una orden de *injunction* permanente. La sentencia ordenaba a los demandados que se abstuvieran de continuar la fabricación en forma alguna y ordenó la demolición de la parte que ya había sido construída, debiendo quedar los solares en las mismas condiciones en que se encontraban antes de empezarse la construcción de los referidos garages.

Seis son los errores que alega el apelante que han sido cometidos por la corte sentenciadora, a saber:

1. La corte inferior cometió error al denegar la moción de traslado. Los apelantes alegan que la acción sobre *injunction* se dirige contra la persona y que la ejercitada en este caso es esencialmente personal, puesto que con ella se trataba de impedir el quebrantamiento de un pacto o convenio. El artículo

75 del Código de Enjuiciamiento Civil dispone entre otras cosas lo siguiente:

"Artículo 75. Deberán sustanciarse en el distrito en que radique el objeto de la acción, o parte del mismo, sin perjuicio de la facultad de la corte para cambiar el lugar de la vista, a tenor de lo dispuesto en este código, los pleitos que se sigan por las causas siguientes:

" '1. Para recobrar la posesión de bienes raíces o de una propiedad o interés en la misma, o para determinar en cualquier forma dicho derecho o interés, y por daños causados a propiedad inmueble.' "

Lo que en realidad alegan los apelantes es una infracción de sus derechos y la fundan en la posesión que tienen de una parcela de terreno. Alegan derechos que si no expresan claramente los de un gravamen o servidumbre, es algo equivalente a esto. Sostienen que tienen derecho a dejar libre tres metros de espacio de las edificaciones en la parte de Miramar, donde tienen su residencia. Opinamos que discuten un derecho real con arreglo a la letra y espíritu del artículo 75; y si una de sus principales alegaciones es correcta, el derecho que alegan tener se refiere a la propiedad más bien que a la persona. Tal fué la cuestión suscitada entre las partes, y los apelados tenían derecho a que la misma fuera resuelta en San Juan. Es cierto que los demandados residen en el distrito de Humacao, pero la materia objeto de la acción radica evidentemente en San Juan. En el caso de *Veve et al.* v. *The Fajardo Development Co.,* 15 D. P. R., 577, citado por el apelante—los hechos son que el demandado iba a realizar actos ilegales en la finca que se alegaba pertenecía a los demandantes, tratando de colocar raíles de un ferrocarril. El demandado fué emplazado en el distrito de Ponce y aquella corte tenía jurisdicción sobre dicho demandado. Los procedimientos fueron preliminares y no se presentó ninguna moción sobre traslado y la Corte de Distrito de Ponce reservó expresamente la cuestión relativa a que pudiera verificarse luego el traslado. Habiendo adquirido jurisdicción sobre el presente demandado, la Corte de Distrito de Ponce, aún en el supuesto de que existiera un

interés en la finca en cuestión, sobre cuyo punto no emitimos ninguna opinión, ciertamente tenía jurisdicción para conocer del caso hasta que se solicitara un traslado del mismo. Si la infracción del convenio en el presente caso se considera como un perjuicio para la finca como puede serlo, las autoridades sostienen claramente la teoría que sustentan los demandados. *Drinkhouse* v. *Spring Valley Water Works*, 80 Cal., 308; *Norseville* v. *North Bloomfield Gravel Mining Company*, 66 Cal., 343.

II. *Que la corte inferior cometió error al declarar sin lugar las excepciones previas presentadas por los demandados y apelantes.*

La presente es una acción sobre *injunction* en la que los apelantes alegan que la corte cometió error al no desestimar la demanda, puesto que el contrato fué uno que, si existió en realidad, fué entre la compañía propietaria de los terrenos y los predecesores en derecho del demandado y que no existe *nexus* o relación contractual alguna entre los demandantes y demandados en este caso. Admiten que en los Estados Unidos existen resoluciones que demuestran que una demanda de esta clase puede iniciarse a nombre de una tercera persona que no tomó parte en el contrato original, pero sostienen que todas estas resoluciones fueron dictadas en equidad y que la jurisprudencia de equidad no es aplicable en las cortes de Puerto Rico.

Citan además los apelantes el artículo 1224 del Código Civil, que limita los efectos de un contrato a las partes que los otorgan y a sus herederos, con arreglo a cuyo artículo la única persona que puede entablar esta acción era la Sociedad Popular Cooperativa.

La ley de marzo 8, 1906, pág. 81, dispone entre otras cosas, lo siguiente:

"Sección 1. El *injunction* es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por

otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra.''·

"Sección 2. La Corte Suprema, o cualquier Juez de la misma, podrá, para hacer efectiva su jurisdicción, librar mandamientos de *injunction,* bajo las reglas prescritas por la ley, y los jueces de las respectivas cortes de distrito podrán también librarlos en todos los casos en que tales mandamientos sean procedentes.''

.La cuestión principal que debemos considerar es si se infringió algún derecho de los demandantes. El objeto de la compañía cooperativa según se infiere de su nombre, era asegurar para sus asociados la urbanización de la parte de! terreno conocido por Miramar. La idea fué que la asociación y cada dueño subsiguiente de solares quedara obligado a conservar esa relación cooperativa. Era un derecho recíproco para crear y tener en cuenta ciertas condiciones relativas a todo el terreno y cada comprador adquirió la propiedad teniendo conocimiento de esas condiciones. Nadie estaba obligado a comprar terreno en Miramar y si lo hacía quedaba obligado según el registro a informarse del plan original hecho por los miembros de la compañía y sus sucesores. Se inducía a las personas a comprar, manifestándoles que cierta porción del terreno comprendido en cada solar quedaría libre de toda construcción. Cada propietario por consiguiente aun cuando no tuviera un derecho distinto o servidumbre de paso por el terreno, tenía un interés en hacer que se dejara la distancia de tres metros del sitio en que se prohibía hacer construcciones.

Cada dueño o propietario tenía un interés común en que se respetara esa distancia. Toda la propiedad en Miramar era una especie de condominio y este derecho pertenecía no solamente a !as partes primitivas del contrato, sino también a cada dueño en ese distrito. Todo comprador adquiría un derecho en la finca .de cada uno de los demás propietarios, y teniendo dicho derecho podía ejercitarlo. Artículo 1 de la Ley de *Injunction.*

Las cortes de Puerto Rico no tienen jurisdicción general

en equidad tal como la misma se aplica en las cortes de Inglaterra y de los Estados Unidos, pero tienen por virtud de la Ley de *Injunction* jurisdicción para impedir las infracciones de los derechos. Al decretarse la Ley de *Injunction,* la legislatura necesariamente adoptó por lo menos cierta parte de aquella que está vigente en los Estados Unidos. Si no existe ningún otro principio que regule esta materia, creemos que la demandada Concepción Matta, está impedida para negar los derechos de los demandantes en cuanto a este particular.

En el artículo 1342 de la Jurisprudencia sobre Equidad de Pomeroy, aparece lo siguiente, que es de aplicación a este caso:

"Artículo 1342. *Condiciones restrictivas que crean servidumbres en equidad.*—Esta doctrina ha sido ya examinada y se ha mostrado que las cláusulas restrictivas contenidas en escrituras, arrendamientos y convenios que limitan el uso del terreno de modo específico, o que determinan un uso particular que crea servidumbres en equidad sobre la finca, podrán ser ejercitadas específicamente en equidad, por medio de un *injunction* no solamente entre las partes directamente interesadas, sino también entre los subsiguientes compradores que tengan conocimiento del caso, aun cuando las restricciones no sean de la clase que técnicamente van unidas a la propiedad. Por supuesto, el *injunction* en esta clase de casos se concede generalmente por el incumplimiento de la cláusula restrictiva. La cuantía de los daños y perjuicios y hasta el hecho de que el demandante haya sufrido perjuicios pecuniarios son cuestiones completamente inmateriales. Uno de los modernos jueces más competentes de equidad ha dicho: 'Ha quedado bien establecido por las autoridades, que hay suficiente causa que justifique a la corte en su intervención, si ha habido una infracción de las condiciones. No es a la corte, sino a los demandantes a quienes incumbe estimar la cuantía de los daños que se originan del perjuicio causado a los mismos. Desde el momento en que la corte ve que ha existido un incumplimiento de las condiciones restrictivas, eso constituye un perjuicio, y la corte no tiene derecho a estimarlo, ni a negar el derecho del demandante al cumplimiento específico de su contrato, aunque su remedio es aquel a que se ha hecho referencia, o sea, el *injunction.*' "

III y IV. Que la corte inferior cometió error al considerar como privilegiadas las restricciones y no como abandonadas por haber quedado disuelta la compañía y sus planes y debido a la resolución de la corte en cuanto a este particular.

Alegan los apelantes que la ley no favorece las restricciones sobre las propiedades. Sin embargo, cuando es clara la intención de crear una servidumbre en equidad o convenio restrictivo de esta naturaleza, las cortes generalmente deben hacer que los mismos se cumplan si no son contrarios al orden público y no producen una verdadera injusticia.

La mera disolución de la compañía, según hemos visto no afectó a los derechos de los propietarios entre sí. No' establece diferencia alguna que al venderse un gran número de solares después de haberse disuelto la compañía, ordenara la corte que la propiedad fuera vendida libre de toda carga o gravamen. De un examen que se haga de los autos y de los hechos se verá que lo que la corte tuvo presente fueron las anteriores hipotecas y gravámenes que existían sobre los terrenos, y librar a cualquier comprador de toda responsabilidad por cualquier operación financiera de la sociedad cooperativa. El pleito seguido por el accionista no tuvo por objeto librar la finca de las cláusulas restrictivas, sino solamente que se hiciera una liquidación y balance de toda la propiedad de la corporación. Si el propósito hubiera sido terminar este contrato con cláusulas restrictivas, los distintos dueños de solares hubieran sido hecho partes, así como también se hubiera expresado el objeto en la demanda. Además, tenemos duda en cuanto a las facultades de la corte para dictar sus órdenes sobre la venta con el fin de extinguir estas servidumbres o derechos en equidad. Dicha orden hubiera sido una cuestión *coram non judice,* no siendo ese el fin que perseguía la corte.

V. La corte inferior cometió error al no considerar como abandonadas o renunciadas las cláusulas restrictivas debido a los actos ejecutados por las partes. La contención de los apelantes es que como los demandantes en este pleito o alguno de

ellos habían puesto palizadas de distintas clases, ellos renunciaron o abandonaron o estaban impedidos de acudir a la corte, por no haber venido a la misma con sus manos limpias (*with clean hands.*) La corte inferior fué de opinión de que no existió ninguna violación sustancial de las cláusulas restrictivas sobre construcciones, y que con excepción de una ligera proyección. y la construcción de estas palizadas, los demandantes. habían todos cumplido con dicho convenio. La corte fué de opinión y en eso estamos conformes, que las infracciones no tenían gran importancia, y que por tanto no constituían una abierta y manifiesta violación de tal naturaleza que quedaran impedidos los peticionarios de poder ejercitar el remedio del *injunction,* estando apoyado el criterio sustentado por la corte en el caso de *Deacon* v. *Sadberg,* 179 Mass., 396.

VI. La corte inferior cometió error al no denegar el *injuncaion* habiendo sido demostrada la demora o negligencia de los apelados, y por el hecho de que las obras estaban terminadas al presentarse la demanda.

Aparece de la prueba que los demandados fueron notificados por los demandantes o sus agentes con respecto al hecho de que estaban infringiendo el convenio sobre construcciones, en momentos en que las paredes de las edificaciones habían progresado muy poco, y dentro de veinte días después, fué presentada la demanda. Teniendo en cuenta estos hechos no vemos que haya habido negligencia alguna por parte de los apelados. Con respecto al hecho de que las edificaciones estaban casi terminadas cuando los demandantes comenzaron el pleito creemos, que el hecho de que los demandados estaban obligados a conocer las cláusulas restrictivas, que fueron notificados poco después de haber empezado la edificación y que insistieron todavía en seguir adelante con la edificación, están impedidos de hacer alegaciones en contra de la acción tomada por la corte. Sin embargo, como los demandados debieron saber por el registro, que no podían hacerse edificaciones en el espacio de tres metros y esto no obstante edifi-

caron los garages, ellos solamente son culpables por sus propios actos. Si fuera la intención de los otros dueños de solares el poner una acera dentro de este espacio de tres metros según se disponía en el convenio primitivo, ninguno de los actos ejecutados por los demandantes serán obstáculos para la acera, pero sí los garages edificados por los demandados, por encontrarse próximos a la calle.

No encontramos que se haya cometido error en la sentencia y debe la misma ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado MacLeary.

Los Jueces Asociados del Toro y Aldrey no tomaron parte en la resolución de este caso.