# 99 DTA 180

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
### PANEL I

BENIGNO RODRIGUEZ PEREZ; CARMEN LYDIA MARTINEZ VAZQUEZ Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Apelantes

v.

ROBERTO GOMEZ; JANE DOE Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; REMAR, INC. Y/O REMAR; WILFREDO CABALLERO; RAUL MORALES; DRA. ABIGAIL CARABALLO
Apelados

Núm. KLAN-98-00309

San Juan, Puerto Rico, a 19 de mayo de 1999

Panel integrado por su Presidente, el Juez Brau Ramírez, el Juez Colón Birriel y la Juez Pesante Martínez

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Los apelantes, Benigno Rodríguez Pérez, Carmen Lydia Martínez Vázquez y la Sociedad Legal de Bienes Gananciales por ellos compuesta solicitan la revocación de la sentencia emitida el 9 de febrero de 1998 por el Tribunal de Primera Instancia, Sala Superior de Guayama.

Mediante el dictamen en cuestión, el Tribunal desestimó una acción de Entredicho Preliminar y Permanente instada por los apelantes contra la parte apelada REMAR, Inc. *("REMAR"),* Roberto Gómez, Jane Doe y la Sociedad de Bienes Gananciales por ellos compuesta, Wilfredo Caballero, Raúl Morales y la Dra. Abigail Caraballo. Los apelantes solicitaban que se prohibiera a los apelados el establecimiento de un centro de rehabilitación para drogadictos y alcohólicos en una propiedad perteneciente al apelado Roberto Gómez situada en la Comunidad Ranchos de Guayama en el Barrio Quebrada Yeguas del Municipio de Salinas, en vista de una servidumbre en equidad que grava los predios de dicha Comunidad y que prohibe el uso de los terrenos para fines comerciales.

El Tribunal determinó que el establecimiento en cuestión no estaba comprendido en la prohibición porque el mismo no constituia un *"uso comercial"* de la propiedad.

Confirmamos.

## II

Según se desprende de los autos, los apelantes Benigno Rodríguez Pérez y Carmen Martínez Vázquez son residentes del lote D-7 de la mencionada Comunidad Ranchos de Guayama, localizada en el barrio Quebrada Yeguas en Salinas, Puerto Rico. El apelado, Roberto Gómez, junto con su esposa, designada en la demanda bajo el nombre ficticio Jane Doe, también son propietarios en dicha Comunidad, siendo los dueños del lote C-7 de la misma, adyacente al de los apelantes.

Según surge del récord, la Comunidad en cuestión fue producto de un desarrollo de una finca de 1,185 cuerdas llevada a cabo en 1970 por la corporación Land Owners Development. El proyecto se encuentra dividido en dos áreas: una residencial y otra comercial. En el área comercial existe un centro de rehabilitación llamado *"Pabellón de la Fe"*, dedicado a ofrecer tratamiento y hospedaje a personas adictas a las drogas y a alcohólicos.

El uso de las distintas propiedades residenciales de la Comunidad se encuentra restringido por varias servidumbres en equidad. Específicamente, tanto en el Contrato de Promesa de Compraventa otorgado por cada uno de los titulares de la Comunidad para adquirir sus predios como en la Escritura Matriz y en las Escrituras de Compraventa individuales se estableció la siguiente restricción:

*"Cuatro: No se podrán poner anuncios comerciales de clase alguna en la Parcela, ni usarse dicha parcela para usos comerciales, ni se podrán depositar escombros, materiales o desperdicios, y las basuras deberán depositarse en recipientes adecuados, quedando bien entendido que, de requerirse el establecimiento de algún comercio para servicio de los vecinos del Proyecto Ranchos de Guayama, éste se establecerá en el área o áreas reservadas por la vendedora para tal fin dentro de la demarcación donde se instalen las facilidades recreativas, o colindantes o cercanas a las mismas."*

No existe controversia que la propiedad de los apelados está sujeta a la referida condición. La misma, al igual que las otras restricciones, fue inscrita en el Registro de la Propiedad.

La apelada REMAR es una corporación sin fines de lucro organizada bajo las leyes del estado de Illinois, con oficinas principales en Florida, debidamente inscrita y registrada en el Departamento de Estado de Puerto Rico desde 1996. Su propósito principal es brindar alojamiento, tratamiento y servicios a personas con problemas de adicción a drogas y alcoholismo.

En o cerca del verano de 1996, REMAR otorgó un contrato de arrendamiento con el Sr. Gómez y la esposa de éste para el arrendamiento del lote C-7 de la Comunidad, con el propósito de establecer allí un centro de rehabilitación de drogadictos y alcohólicos.

El proyecto, según se desprende del expediente, albergaría a un máximo de ocho (8) personas, incluyendo a los empleados. El mismo operaría de 9:00 a.m. a 1:00 p.m. y de 3:30 p.m. a 6:00 p.m. Se proponía desarrollar su estructura financiera bajo un programa agrícola de frutos menores, crianza de aves, y la realización de mudanzas y otros servicios por los adictos en tratamiento.

REMAR solicitó el correspondiente permiso de uso ante la Administración de Reglamentos y Permisos ("A. R.P.E."). Los apelantes comparecieron en oposición al mismo, alegando que el uso proyectado estaba prohibido por la citada condición restrictiva que gravaba la propiedad.

El 31 de junio de 1996, los apelantes incoaron, además, la presente demanda de entredicho preliminar y permanente, solicitando al Tribunal que detuviera el establecimiento del centro de rehabilitación en el lote adyacente al de ellos.

En su demanda, los apelantes insistieron que el uso del predio contemplado por los apelados estaba prohibido por las condiciones restrictivas incluidas en la escritura matriz de la Comunidad, así como las escrituras individuales de los predios. Los apelantes plantearon que sufrían de aprehensión y constante temor por su seguridad personal y psicológica, ya que no iban a tener control sobre las personas que utilizarían el centro de rehabilitación.

Además del Sr. Gómez y de REMAR, fueron incluidos en la demanda como partes demandadas Wilfredo Caballero, como presidente y/o director de REMAR y Raúl Morales y la Dra. Abigail Caraballo, como los encargados del proyecto.

El 7 de agosto de 1996, los apelantes solicitaron la inclusión como demandantes de otros residentes de la Comunidad.

Oportunamente, los apelados contestaron la demanda negando las alegaciones. Plantearon que el centro de rehabilitación contemplado no era un uso *"comercial"*, por lo que el mismo no estaba prohibido por las condiciones restrictivas.

Posteriormente, los apelantes desistieron voluntariamente de la acción contra la Dra. Abigail Caraballo, Raúl Morales y Wilfredo Caballero. El pleito continuó contra REMAR y contra el Sr. Gómez.

El 29 de mayo de 1996, el Tribunal celebró una vista evidenciaria donde solamente declaró el Sr. Salvador Pérez Martí, representante de REMAR.

El Sr. Pérez Martí testificó que él era el director de REMAR en Puerto Rico. Indicó que los fondos necesarios para el funcionamiento del centro de rehabilitación provenían de la oficina principal de REMAR en España, de donde eran transferidos a Miami y luego a Puerto Rico.

El Sr. Pérez Martí atestó que al momento de celebrarse la vista judicial, REMAR de Puerto Rico no producía ingresos por no estar aún en operaciones. Declaró que no se le pedía aportaciones a los jóvenes que reciben tratamiento en el centro; tampoco reciben ayuda de los gobiernos de Puerto Rico o Estados Unidos.

Durante el contrainterrogatorio, el testigo explicó que REMAR genera sus fondos de distintas maneras. Tienen una lista de auspiciadores que le hacen aportaciones monetarias. Además, generan ingresos realizando mudanzas, trabajos de plomería, hojalatería y vendiendo videos. También se venden los objetos que han recibido en donaciones en negocios conocidos como *"Rastros"*.

Sobre el tratamiento de rehabilitación declaró el Sr. Pérez Martí que consistía en charlas, consejería espiritual y paseos que se realizan en el mismo terreno. No se usan drogas ni otros medicamentos.

El 3 de septiembre de 1997, mientras el pleito se encontraba pendiente, A.R.P.E. aprobó el permiso de uso solicitado por REMAR, por vía de excepción. La agencia, sin embargo, no adjudicó los planteamientos de la parte apelante en torno a que el uso contemplado era contrario a las condiciones restrictivas que gravaban el inmueble, por entender que dicho planteamiento le correspondía resolverlo al Tribunal.

El 9 de febrero de 1998, luego de otros incidentes, el Tribunal de Primera Instancia emitió la sentencia apelada, desestimando la demanda instada por los apelantes.

En su sentencia, el Tribunal concluyó que la restricción contenida en la Escritura Matriz prohibiendo el

empleo de la propiedad para usos comerciales *"no constituye impedimento para que Remar, Inc., una institución privada sin fines de lucro y que no se dedica al comercio sino a la rehabilitación, pueda operar en ese lugar."*

La distinguida Sala apelada observó que la escritura matriz no contenía una restricción que requiriera que las parcelas fuesen dedicadas a uso residencial, con exclusión clara y precisa de cualquier otro uso. Concluyó que el uso contemplado por los apelados no era comercial, de acuerdo a la definición de dicho término empleada en el ámbito mercantil, la cual no sólo conlleva el ejercicio de una función intermediaria entre la producción y el consumo, sino que requiere una finalidad de lucro. Expresó:

*"REMAR, Inc. es una institución sin fines de lucro, cuyo propósito es de índole rehabilitador. [N]o es comerciante a tenor con la definición antes citada; por tanto, no usará la parcela para usos comerciales, de manera que no actúa en forma incompatible con la restricción constituida en la escritura matriz."*

El Tribunal desestimó la demanda, denegando el *injunction* solicitado por los apelantes. Insatisfechos, éstos acudieron ante este Tribunal.

## III

En su recurso, los apelantes plantean que el Tribunal de Primera Instancia erró al determinar que las actividades que lleva a cabo REMAR no son comerciales y que, por lo tanto, no le es de aplicación la servidumbre en equidad que grava el complejo de viviendas Ranchos de Guayama.

En nuestra jurisdicción, la propiedad se presume libre de cargas y gravámenes. De ahí que cualquier limitación a la misma se interpreta de forma estricta y restrictiva. *Soto Vázquez v. Vázquez Torres*, ___ D.P.R. ___ (1995), **95 J.T.S. 46,** a la pág. 797; *González v. Hawayeck,* 71 D.P.R. 528, 533 (1950).

Es necesario que una limitación al uso de la propiedad se informe debidamente y sin ambigüedades a los adquirentes y terceros. *Soto Vázquez v. Vázquez Torres,* **95 J.T.S. 46,** a la pág. 798; *Condominio Profesional San Juan Centre v. PRF, Inc.,* ___ D.P.R. ___ (1993), **93 J.T.S. 85,** a la pág. 10,768. Esto debe ser así porque se trata de dar aviso suficiente a los adquirentes y terceros para que la determinación de adherirse al estado de derecho creado en la escritura matriz sea una informada e inteligente. *Id.*

En la situación de autos, la restricción invocada por los apelantes consiste en una limitación al uso de la propiedad pactada en la escritura matriz del desarrollo de la Comunidad, así como en las escrituras individuales de compraventa de los predios. Se trata, de una servidumbre en equidad.

Este tipo de servidumbres han sido reconocidas por el Tribunal Supremo de Puerto Rico, habiéndose incorporado la misma a nuestro ordenamiento. Hasta donde podemos determinar, su primera aplicación se realizó en 1913. *Glines v. Matta,* 19 D.P.R. 409, 417 (1913). Posteriormente, dicha figura ha sido expandida y adaptada a nuestra realidad a través de la jurisprudencia del Tribunal Supremo de Puerto Rico. Véase, *Asoc. V. Villa Caparra v. Iglesia Católica,* 117 D.P.R. 346, 352 (1986); véase, además, *Sabater Correa v. Corporación de Desarrollo Económico del Pastillo, Inc.,* ___ D.P.R. ___ (1996), **96 J.T.S. 47,** a la pág. 928.

Las servidumbres en equidad consisten de condiciones restrictivas constituidas unilateralmente por el urbanizador o por los titulares de una comunidad que limitan las facultades de los futuros adquirentes. Las limitaciones pueden ser en cuanto al uso y las edificaciones permisibles y perseguir el propósito de preservar la belleza, comodidad y seguridad del reparto residencial. *Asoc. V. Villa Caparra v. Iglesia Católica,* 117 D.P.R. 346, a la pág. 351; *Sands v. Ext. Sagrado Corazón, Inc.,* 103 D.P.R. 826, 827 (1975); *Sabater Correa v. Corporación de Desarrollo Económico del Pastillo Inc.,* **96 J.T.S. 47,** a la pág. 928.

El Tribunal Supremo de Puerto Rico ha establecido que para que una servidumbre en equidad pueda gozar de validez y eficacia, la misma tiene que cumplir con los siguientes requisitos: (i) las limitaciones al derecho de propiedad deberán ser razonables, (ii) las mismas deben haberse establecido como parte de un plan general de mejoras, (iii) las restricciones deben constar de forma específica en el título, (iv) las mismas deben constar inscritas en el Registro de la Propiedad. *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 D.P.R. 346, a la pág. 352; *Sabater Correa v. Corporación de Desarrollo Económico del Pastillo, Inc.*, 96 J.T.S. 47, a la pág. 928.

Una vez inscritas en el Registro de la Propiedad, se considera que las restricciones constituyen derechos reales oponibles *erga omnes*, lo que crea entre los predios afectados una relación de servidumbres recíprocas, pues cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización. *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 D.P.R. a la pág 353; *Sabater Correa v. Corporación de Desarrollo Económico del Pastillo, Inc.*, 96 J.T.S. 47, a la pág. 928.

Las servidumbres en equidad pueden extinguirse o modificarse en los siguientes casos: (1) por acuerdo de los interesados; (2) por efecto del tiempo o por realizarse la condición si así se constituyeron; (3) por confusión; (4) por renuncia o abandono de los propietarios que reciben los beneficios de la servidumbre; (5) por expropiación forzosa si los gravámenes son incompatibles con el uso público del inmueble expropiado; (6) cuando cambios radicales del vecindario no sólo hacen la restricción irrazonable y opresiva para el dueño del predio sirviente, sino también destruyen el valor que la restricción tenía para el dueño del predio dominante, por lo cual resulta en verdad imposible alcanzar los fines que perseguía la servidumbre. *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 D.P.R. a la pág 354: *Colón v. San Patricio Corporation*, 81 D.P.R. 346, a las págs. 261-262; *Sabater Correa v. Corporación de Desarrollo Económico del Pastillo, Inc.*, 96 J.T.S. 47, a la pág. 929.

El Tribunal Supremo de Puerto Rico ha reconocido que los dueños de predios favorecidos por una servidumbre en equidad tienen disponible el recurso de *injunction* para hacer efectivos sus derechos e impedir violaciones a las limitaciones impuestas, *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 D.P.R. a la pág. 354; *Glines v. Matta*, 19 D.P.R. a la pág. 416. El demandado puede, a su vez, levantar cualquier defensa de equidad, tal y como consentimiento; incuria, manos sucias, o cualquier otro impedimento de naturaleza análoga. *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 D.P.R. a la pág. 354; *Colón v. San Patricio Corporation*, 81 D.P.R. 242, 254 (1959).

En la situación de autos, los apelantes plantean que el centro de rehabilitación propuesto por los apelados constituye un *"uso comercial"* del predio C-7 de la Comunidad, prohibido por la restricción contenida en la citada cláusula Cuatro de las escrituras de desarrollo y de compraventa de la propiedad, la que requiere que este tipo de actividad sea llevada a cabo en el área de la Comunidad reservada para tales fines.

Los apelados cuestionan que el Tribunal hubiera fijado el significado del término *"uso comercial"* a base de los principios del derecho mercantil. Señalan que dicho término ha recibido una interpretación amplia por parte del Tribunal Supremo de Puerto Rico en el contexto de la Ley de Propiedad Horizontal, *Soto Vázquez v. Vázquez Torres, supra; Condominio Profesional San Juan Centre v. PRF, Inc., supra*. Invocan la amplia definición adoptada para el término *"comercio"* por la enciclopedia *Corpus Juris Secundum*, bajo la doctrina constitucional federal elaborada bajo la Cláusula de Comercio de la Constitución de los Estados Unidos, así como por un sinnúmero de casos de distintas jurisdicciones de los Estados Unidos que han considerado el significado de esta palabra en diferentes contextos, tales como el pago de impuestos y zonificaciones de propiedad, entre otros. Véase el alegato de los apelantes, las págs. 14-17.

A nuestro juicio, la gran diversidad de autoridades que emplea el término *"comercio"* de forma diferente en diferentes contextos constituye, precisamente, un argumento de peso para concluir que se trata de un término

ambiguo, cuyo alcance no está claro.

El mismo podría o no incluir el centro de rehabilitación de los apelados, dependiendo del parámetro interpretativo que se empleare. Incuestionablemente, como alegan los apelantes, bajo la amplia definición de *"comercio"* utilizada por el Juez Marshall en *Gibbons. v Ogden*, 22 U.S. 1 (1824), el centro de los apelados constituiría efectivamente un *"uso comercial"*. No así, según opinara la ilustrada Sala de Instancia, a la luz de la definición de *"comerciante"* de nuestro Código de Comercio, 10 L.P.R.A. sec. 1001.

Ahora bien, tratándose de un término impreciso, opinamos que la correcta solución del problema no recae en la libre selección de un parámetro interpretativo sobre otro --según nos instan a realizar los apelantes--- sino que debe aplicarse la regla de hermenéutica mediante la cual la incertidumbre se interpreta en contra de la restricción al derecho de propiedad. *Soto Vázquez v. Vázquez Torres*, **95 J.T.S. 46**, a la pág. 798; *Condominio Profesional San Juan Centre v. PRF, Inc.*, ___ D.P.R. ___ (1993), **93 J.T.S. 85**, a la pág. 10,768.

En efecto, la renuncia de derecho no es favorecida en nuestra jurisdicción y se interpreta restrictivamente. Cf., 31 L.P.R.A. sec. 4826; *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 74 (1987); *Crespo Cardona v. Autoridad de Carreteras*, ___ D.P.R. ___ (1994), **94 J.T.S. 120.**

En la situación de autos, la condición restrictiva invocada por los apelantes resulta, cuando menos, ambigua en su aplicación a los apelados. En estas circunstancias, concluimos que la misma debe ser aplicada restringentemente en contra de la prohibición.

Los apelantes, según observara la distinguida Sala de Instancia, parecen equiparar la condición en cuestión de que no podrá *"usarse dicha parcela para usos comerciales"* con la condición de que *"la parcela sólo podrá ser usada para usos residenciales"*. Pero esta interpretación no encuentra apoyo ni está justificada por el lenguaje. *Cf., Soto Vázquez v. Vázquez Torres*, **95 J.T.S. 46**, a la pág. 798.

Resolvemos que el uso contemplado de la propiedad no contradice la condición restrictiva invocada, interpretada ésta de forma limitada y adjudicando la ambigüedad en el significado del término *"comercial"* en contra de los apelantes.

Por los fundamentos expresados, se confirma la sentencia apelada. La Juez Pesante Martínez disiente por entender que el Centro de Rehabilitación en controversia constituye un uso comercial del predio C-7 y ello está prohibido por las condiciones restrictivas contenidas tanto en la escritura matriz como en las escrituras individuales de los predios.

Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General