*1099 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante este foro apelativo la parte recurrente solicitando la revisión de una Resolución de la Junta de Apelaciones sobre Construcciones y Lotificaciones, en la cual se confirmó a la Administración de Reglamentos y Permisos, en adelante A.R.P.E., en su determinación de no revocar un permiso de uso concedido a la Academia San Miguel, en adelante la recurrida.
Por los fundamentos expuestos a continuación, se CONFIRMA la Resolución recurrida.
I
Los recurrentes son residentes de la Cuarta Extensión de la Urbanización Levittown y vecinos de la Academia San Miguel, ubicada en la referida urbanización, específicamente en los solares AD-29 y AD-30. A continuación; un recuento de los incidentes procesales del caso según surgen de las determinaciones de hechos de la resolución recurrida. Véase, Anejo 1, págs. 3-8, recurrente.
Para el 1981, A.R.P.E. le otorgó un permiso de uso a la Sra. Rosael García Ortega, en representación de la Academia San Miguel, para la operación de un “nursery” y de una escuela en la Avenida Boulevard Monroig AD-29. En el 1983, la Sra. García Ortega suscribió un contrato de arrendamiento para el uso del solar AD-30, que correspondía a la estructura colindante con el “nursery” y la escuela que operaba en el solar AD-29 de la misma urbanización. El Sr. Antonio Correa Álvarez, arrendador de la propiedad AD-30, autorizó el uso de la estructura para fines escolares.
El 4 de agosto de 1988, el Director de la Oficina Regional de A.R.P.E. de Bayamón autorizó un permiso para operar el “nursery” y la escuela en la dirección antes indicada.
El 28 de mayo de 1993, A.R.P.E. expidió un permiso de uso para la operación de un “nursery” y escuela elemental hasta séptimo grado. Para el 1 de diciembre de 1994, A.R.P.E. autorizó la operación del “nursery” y escuela elemental e intermedia hasta octavo grado. Posteriormente, el 23 de octubre de 1996, A.R.P.E. autorizó una enmienda al permiso de uso para añadir grados secundarios a la escuela y operar la misma hasta el cuarto año.
Ante la última enmienda al permiso de uso, varios vecinos, incluyendo al aquí recurrente, cuestionaron la *1100 determinación indicando que no habían sido notificados del proyecto, que no existían estacionamientos, ni facilidades, y que se afectaba su tranquilidad. Luego de celebrada una vista administrativa por A.R.P.E. para atender los reclamos de los vecinos, la agencia revocó la autorización otorgada el 23 de octubre de 1996 y limitó la operación de la Academia San Miguel desde “nursery” hasta octavo grado, según autorizado el 1 de diciembre de 1994.
Luego de varios incidentes procesales, el recurrente presentó otra querella contra la Sra. García Ortega, aquí recurrida, en la que solicitó la revocación del permiso de uso para operar la Academia San Miguel ubicada en la Avenida Boulevard Monroig AD-29 aduciendo como hechos constitutivos de posible violación, los siguientes a continuación: (1) que la propiedad no cuenta con un permiso del Departamento de Educación para la operación de la escuela, (2) que existen violaciones de distancia en ambos patios laterales, patios delanteros y posterior, (3) que la propiedad no cuenta con espacios de estacionamientos, (4) que el área de ocupación excede la permitida por la reglamentación, y (5) que el uso opera desordenadamente. Ante dichos reclamos, A.R.P.E. señaló una vista para considerar el caso para el 9 de enero de 2002, la cual fue suspendida a solicitud de la parte querellada.
Posteriormente, A.R.P.E. emitió una notificación sobre la celebración de una vista administrativa de posible revocación en los casos pertinentes a la Academia San Miguel. La vista en el caso comenzó el 23 de abril de 2002 y continuó los días 17 de mayo,- 12 de junio y 19 de junio de ese año corriente. La parte concesionaria levantó una defensa de cosa juzgada aduciendo identidad de personas, cosas, y causa. Aún así, A.R.P.E. decidió reexaminar el caso en el cual quedó demostrado lo siguiente, a saber: (1) que no existía vandalismo por parte de los estudiantes; (2) que se contaba con la licencia del Consejo de Educación Superior; (3) que el personal docente estaba cualificado; (4) que la estructura AD- 29 contaba con salones con acondicionadores de aire; (5) que se contaba con un Plan de Desalojo Certificado por el Departamento de Bomberos y póliza de seguro contra incendio; y (6) que el horario de operación era de 8:00 a.m. a 1:30 p.m. Así las cosas, A.R.P.E. determinó que, según lo demostrado por la prueba presentada, la operación en la institución no era desordenada.
El 9 de octubre de 2002, A.R.P.E. realizó una inspección a la Academia San Miguel de la cual surge lo siguiente, a saber: (1) que se estaba operando sólo en la estructura AD-29; (2) que había hacinamiento de estudiantes por haber un exceso de cuarenta (40) alumnos en contravención a lo dispuesto en el Reglamento; (3) que el solar cuenta con una cabida superficial de 310.50 metros cuadrados que enclava una estructura de una planta en hormigón y bloques, no residencial, con medidas aproximadas de 59’-0” x 34’-6” con un área techada en zinc y acero galvanizado de 12’-0” x 40’-8” en el patio delantero; (4) que la estructura está dividida en siete salones de clases, cocina, comedor y tres baños; (5) que los salones I, II, III, IV, la cocina, el comedor y el baño al posterior, no tienen una ventilación adecuada; (6) que el ancho del pasillo es de 3’-8”.
En consideración a la prueba desfilada en la vista administrativa, el 10 de diciembre de 2002, la agencia emitió un Informe sobre Acuerdo Adoptado por el Gerente Regional de A.R.P.E., en el cual se determinó no revocar el permiso y se denegó la querella instada por el aquí recurrente.
Inconformes con dicha determinación, los recurrentes presentaron una apelación ante la Junta de Apelaciones Sobre Construcciones y Lotificaciones, en adelante la Junta de Apelaciones, el 20 de diciembre de 2002. Luego de celebrada la vista pública correspondiente, y atendido el expediente del caso, el 18 de agosto de 2006, la Junta de Apelaciones confirmó a A.R.P.E. en su determinación de no revocar el permiso otorgado a la recurrida, añadiendo como condiciones las siguientes, a saber: (1) proveer ventilación mecánica a los salones I, II, III, IV, a la cocina, el comedor, y el baño al posterior; y (2) no exceder en la matrícula de cincuenta y cinco estudiantes.
Por estar en desacuerdo con la determinación de la Junta de Apelaciones, comparece la parte recurrente en el presente recurso de revisión con el siguiente señalamiento de error, a saber:
*1101 “Erró la Junta de Apelaciones sobre Construcción y Notificaciones [sic] al permitir la operación de la Academia San Miguel en los predios de la Cuarta Sección de Levittown cuando dicha operación es contraria a la servidumbre en equidad existente y contraria a lo resulto por nuestro Tribunal Supremo en el caso Asociación v. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 352 (1986), y Residentes de Parkville Sur v. Díaz Luciano, 2003 J.T.S. 73".
Contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver.
II
A. La revisión judicial de las determinaciones de agencias administrativas.
En nuestro ordenamiento jurídico, es norma reiterada que las conclusiones e interpretaciones de los organismos y agencias administrativas merecen gran respeto y consideración judicial, y sus decisiones se presumen correctas. Castillo v. Depto. del Trabajo, 152 D.P.R. 91, 97 (2000). Por tanto, los procesos administrativos y las determinaciones de hechos de las agencias están cobijados por una presunción de regularidad y corrección. Vélez Rodríguez v. A.R.P.E., 2006 J.T.S. 78, 167 D.P.R. _. Así las cosas, la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. López v. Administración, 2006 J.T.S. 146, 168 D.P.R. _.
Sabido es que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo, mientras que las conclusiones de derecho serán revisables en todos sus aspectos. Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2175.
La revisión judicial de las decisiones administrativas debe centrase en tres aspectos principales, tales como: (1) el remedio-concedido; (2) las determinaciones de hechos; y (3) las conclusiones de derecho de la agencia. P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 281 (2000). Esto no significa que los tribunales puedan descartar libremente las conclusiones e interpretaciones de una agencia administrativa. Los tribunales le deben deferencia a las interpretaciones que las agencias efectúan con relación a la ley que administran, pues se presume que éstas poseen un conocimiento especializado en los asuntos que le fueron encomendados por el legislador. Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 109-110. En casos marginales o dudosos, la interpretación de un estatuto por una agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando esa interpretación no sea la única razonable. Martínez v. Rosado, 2005 J.T.S. 132, 165 D.P.R. _.
B. A.R.P.E. y la Junta de Apelaciones sobre Construcción y Lotifícaciones.
La agencia administrativa conocida como A.R.P.E. es la responsable en aplicar a casos individuales los reglamentos de la Junta de Planificación y, a su vez, está a cargo del proceso de concesión de permisos de uso y construcción. Vélez Rodríguez v. A.R.P.E., supra. Entre las funciones más importantes de A.R.P.E. se encuentra el aplicar los reglamentos de planificación adoptados por la Junta para el desarrollo, subdivisión y uso de terrenos, y para la construcción y uso de edificios, así como el cumplimiento de toda ley estatal, ordenanza o reglamentación de cualquier organismo gubernamental que regule la construcción en Puerto Rico. Huyke v. Bco. Santander, 157 D.P.R. 521, 550 (2002).
La Ley Orgánica de A.R.P.E., Ley Núm. 76 del 24 de junio de 1975, según enmendada, 23 L.P.R.A. sees. 71 et seq., crea la Junta de Apelaciones sobre Construcciones y Lotificaciones y delimita su jurisdicción. Esta pieza legislativa establece que la Junta de Apelaciones tendrá facultad para entender exclusivamente en aquellos casos en que una parte se encuentre directamente interesada o afectada por actuaciones, determinaciones o resoluciones de A.R.P.E. con relación a lo siguiente, a saber: permisos de construcción y de uso de edificios, permiso de uso de solares, para áreas de estacionamiento; casos y planos de notificación simple; planos de *1102 notificación; y casos en los que se solicite la dispensa del cumplimiento de requisitos de un Reglamento de Planificación mediante una concesión o autorización directa. Ley Orgánica de A.R.P.E., 23 L.P.R.A. sec. 72(c).
Además, la Ley Orgánica de A.R.P.E., supra, le otorga a la Junta de Apelaciones una facultad limitada para entender en aquellos casos decididos en A.R.P.E. al amparo de los Reglamentos de Zonificación, Lotificaciones Simples, Lotificación y Edificación de Facilidades Vecinales, Control de Edificaciones y Desarrollo de Terrenos en Zonas Susceptibles a Inundaciones y de reglamentos de emergencia. 23 L.P.R.A. sec. 72(c).
A nivel apelativo, la Junta de Apelaciones podrá decretar cualquier orden, requerimiento, resolución o determinación que, a su juicio, deba dictarse: (1) por motivo de perjuicios ocasionados por circunstancias especiales cuando la resolución de la cual se apela resulta en una prohibición o restricción irrazonable del derecho del apelante al uso y disfrute de su propiedad; (2) por denegaciones viciosas para emitir los permisos necesarios; y (3) por cualquiera otra razón autorizada en los Reglamentos de la Junta de Planificación y de A.R. P.E, o cualquier otra ley. Ley Orgánica de A.R.P.E., 23 L.P.R.A. sec. 72(c). A tal fin, la Junta de Apelaciones gozará de los mismos poderes del funcionario u organismo de cuya actuación se apela. Ley Orgánica de A.R.P. E., 23 L.P.R.A. sec. 72(c); Junta de Planificación v. J.A.C.L, 109 D.P.R. 210, 218 (1979).
C. Disposiciones reglamentarias aplicables a la presente controversia.
La Junta de Apelaciones, al ejercer su función revisora sobre la determinación de A.R.P.E., lo hizo en función de las disposiciones del Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Reglamento Núm. 4844, Departamento de Estado, 14 de diciembre de 1992, en adelante Reglamento de Zonificación.
El área geográfica donde se ubica la Academia San Miguel está clasificada como una zona R-3. Ese distrito se establece para clasificar áreas desarrolladas o que puedan desarrollarse, permitiéndose diferentes tipos de vivienda en solares de trescientos metros (300) cuadrados o más. Véase, sección 13.01 del Reglamento de Zonificación.
En los Distritos R-3 se usarán los edificios o pertenencias para los siguientes fines, a saber: (1) casas de una o dos familias, (2) casas en hileras y casas patio conforme las secciones 74.00 y 75.00 del Reglamento, (3) casas de apartamientos conforme la sección 76.00 del Reglamento, y (4) otros usos de acuerdo con las disposiciones de la sección 99.00 del Reglamento. Véase, sección 13.02 del Reglamento de Zonificación.
Las secciones 99.00 a la 99.09 del Reglamento de Zonificación contienen las disposiciones referentes a las denominadas “Excepciones”. Veamos.
Por vía de excepción, la Junta o la Administración considerará consultas de ubicación o solicitudes de permisos en determinados distritos. Véase, sección 99.01 del Reglamento de Zonificación. El propósito de las excepciones es identificar aquellos usos compatibles con el carácter esencial del distrito, que en forma discrecional podrían autorizarse sin detrimento al propósito del distrito. Véase, sección 99.02 del Reglamento de Zonificación.
La determinación sobre un uso propuesto descansará en la evaluación de los factores que presente y demuestre la parte interesada. Por tanto, para una determinación favorable, la parte interesada tiene que acreditar la capacidad de operar el uso juiciosamente, y que la operación del uso es conveniente al interés público a base de ciertos criterios no taxativos, a saber: (1) que se proteja la salud, seguridad y bienestar de los ocupantes de la propiedad objeto de la solicitud, así como de propiedades limítrofes; (2) que no se menoscabe el suministro de luz y aire a la edificación a usarse u ocuparse, o a las propiedades limítrofes; (3) que no se aumente el peligro a fuego; (4) que no se ocasione reducción o perjuicio a los valores de las propiedades *1103 establecidas en áreas vecinas; (5) que se demuestre la viabilidad, adecuacidad y conveniencia del uso solicitado; y (6) que se cumpla con las condiciones establecidas para el caso particular. Véase, sección 99.03 del Reglamento de Zonificación.
Entre los usos a considerarse por A.R.P.E. en los distritos correspondientes se encuentra el siguiente, relevante al caso ante nos:

“Institución docente de nivel pre-primario, primario, secundario y superior en cualquier distrito residencial y en Distritos A-3, A-4, CR-2, CR-3 y DS de acuerdo con lo siguiente:

a. Se podrá permitir la construcción de otros edificios para usos relacionados en el mismo predio siempre que se presente un concepto del desarrollo de los terrenos y se cumpla con los requisitos sobre tamaño mínimo de área de solar establecidos en este Reglamento para cada uso específico. El área del solar ocupada por los usos relacionados no se contará al determinar el área de solar requerida para usos docentes.

b. El área mínima de terreno a requerirse, se calculará a base de ocho (8) metros cuadrados por estudiante.

c. El tamaño de los salones a permitirse, se calculará a base de veinte (20) pies cuadrados por estudiante.

__ d- Solares en que se proyecte construir edificios para fines docentes, deberán mantener una separación mínima de cincuenta (50) metros lineales de cualquier otro solar en que ubique o haya sido previamente autorizada la construcción de una estación de gasolina. La separación mínima requerida será medida tomando los puntos más cercanos entre ambos solares.

e. Los edificios guardarán patios de dos (2) veces los requeridos en el distrito en que ubican.

f. En los Distritos RT-2, RT-3, RT-4 Y RT-5, se celebrará vista pública previo a la autorización”.

Véase, sección 99.05(12) del Reglamento de Zonificación.
Según el reglamento aplicable al momento de A.R.P.E. tomar la decisión de no revocar el permiso otorgado a la recurrida para la operación de la Academia San Miguel, la Junta de Apelaciones concluyó que dicha determinación estaba correcta, toda vez que el uso solicitado estaba permitido mediante excepción. Por tanto, la Junta de Apelaciones confirmó a A.R.P.E. en su determinación.
D. Las servidumbres en equidad.
Esta figura jurídica proveniente del derecho angloamericano fue reconocida en nuestro ordenamiento jurídico en el caso Glines v. Matta, 19 D.P.R. 409 (1913).
En términos generales, una servidumbre en equidad consiste de unas restricciones y condiciones que limitan el uso de terrenos, que operan a beneficio de los presentes y futuros propietarios, mediante las cuales se imponen cargas o gravámenes especiales, como parte de un plan general para el desarrollo y preservación de una urbanización residencial. Res. Parkville v. Díaz, Palou, 2003 J.T.S. 73, 159 D.P.R. _.
Las servidumbres en equidad constituyen cargas o gravámenes reales, por lo que crean derechos reales inscribibles en el Registro de la Propiedad, los cuales una vez inscritos, son oponibles erga omnes. Asoc. Vec. Urb Huyke v. Bco. Santander, supra, a la pág. 535. Para su validez y eficacia, se requiere que las limitaciones sean razonables, que se establezcan como parte de un plan general de mejoras, y que consten de forma *1104 específica en el título, y se inscriban en el Registro de la Propiedad. Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 352 (1986).
De manera consistente, se ha reiterado que los dueños de predios sujetos a servidumbres en equidad pueden impedir violaciones a las limitaciones impuestas, y hacer efectivos sus derechos a través del recurso de injunction. Asociación v. Villa Caparra v. Iglesia Católica, supra, a la págs. 353-354 (1986); Residentes Parkville v. Díaz, supra; Asociación de Propietarios de Playa Húcares v. Rodríguez, 2006 J.T.S. 39, 167 D.P.R. _. Contra tal recurso, un demandado puede oponer todas las defensas que le otorguen los principios de equidad, a saber: (1) consentimiento {acquiescence)-, (2) conciencia impura {unclean hands); (3) incuria {laches); y (4) impedimento {estoppel). Asoc. V. Villa Caparra v. Iglesia Católica, supra, a la pág. 354; Res. Parkville v. Díaz, Palou, supra. Además, otra defensa disponible es que la servidumbre se haya extinguido o que haya sido modificada. Asoc. V. Villa Caparra v. Iglesia Católica, supra, a las págs. 354-355.
Una vez reconocida la validez y vigencia de las cláusulas restrictivas de una servidumbre en equidad, los tribunales deben hacer cumplir a cabalidad los propósitos del acuerdo al que las partes han aceptado someterse al adquirir la propiedad gravada. Asociación de Propietarios de Playa Húcares v. Rodríguez, supra. Esta norma persigue preservar la autonomía de la voluntad de las partes, reflejada en las cláusulas restrictivas de la servidumbre en equidad, por lo cual los tribunales no tienen facultad para obviar dicha voluntad por criterios ajenos a ésta, salvo que sea contraria a la ley, a la moral o al orden público, supra.
La mera concesión de un permiso por A.R.P.E. no tiene el efecto ni el alcance de anular restricciones privadas que resulten inconsistentes con el permiso concedido. Asoc. Vec. Urb. Huyke v. Bco. Santander, supra, a la pág. 554 (2002). Del mismo modo, una rezonificación concedida no tiene el efecto de anular las restricciones privadas que resulten incompatibles con la misma. Luán Investment Corp. v. Román, 125 D.P.R. 533, 551 (1990). En tales casos, los beneficiarios de la restricción, con el propósito de hacer valer sus derechos, pueden recurrir a una acción independiente, que incluya la del injunction ordinario, para que los reclamos de todas las partes acreedoras al derecho surgido de la servidumbre en equidad, sean adecuadamente atendidos. Asociación de Propietarios de Playa Húcares v. Rodríguez, supra, a las págs. 554-555.
III
En el presente caso, la controversia de las supuestas condiciones restrictivas o servidumbres en equidad no fue atendida por la Junta de Apelaciones. Según nuestro ordenamiento jurídico es el Tribunal de Primera Instancia el foro con jurisdicción para atender esa controversia a través de un recurso de injunction. No le competía a la Junta de Apelaciones resolver la posible existencia de servidumbres en equidad o condiciones restrictivas por carecer de jurisdicción al respecto.
De los autos surge que ante el Tribunal de Primera Instancia, Sala Superior de Bayamón se encuentra pendiente el caso Víctor Roldán v. Rosael García, Academia San Miguel, Núm. DPE-2003-1074 (506), en el cual se dilucidaría el tema de las condiciones restrictivas o servidumbre en equidad. Véase, el alegato de la recurrida titulado “Moción Informativa, Oposición a Solicitud de Revisión, Segunda Solicitud de Desestimación por No Ameritar el Caso la Concesión de un Remedio ”, a la pág. 3.
El recurrente fundamenta su recurso de revisión en condiciones restrictivas o servidumbres en equidad, las cuales aduce sirven de base para que se revoque la decisión de la Junta de Apelaciones. El problema es que la Junta de Apelaciones no adjudicó esa controversia por carecer de jurisdicción para ello, y el asunto está ante la consideración del T.P.I.
La decisión de la Junta de Apelaciones confirmando a A.R.P.E. en su determinación de no revocar el permiso concedido a la parte recurrida no tiene el efecto jurídico de anular las condiciones restrictivas que puedan existir y ser inconsistentes con dicha autorización de uso. Reiteramos que la existencia de supuestas *1105 condiciones restrictivas o servidumbres en equidad debe ser atendida en el foro con jurisdicción, es decir el Tribunal de Primera Instancia.
Al caso ante nos, son de aplicación las normas de deferencia a las determinaciones de una agencia administrativa según establecidas en nuestro ordenamiento jurídico y discutidas con anterioridad. De los autos no surgen indicios que sirvan de fundamento para determinar que la Junta de Apelaciones o A.R.P.E. actuaron de manera ilegal, arbitraria, irrazonable o que hayan abusado de su discreción. La Junta de Apelaciones determinó que la decisión de A.R.P.E. respecto a no revocar el permiso concedido a la parte recurrida, era correcta según las disposiciones del Reglamento de Zonificación aplicable. Por esa razón, la Junta de Apelaciones confirmó la determinación de A.R.P.E.
Ante el foro de instancia, foro con jurisdicción, está presentado el caso para atender la controversia respecto la existencia de posibles condiciones restrictivas o servidumbre en equidad. De determinarse en el tribunal a quo la existencia de estas condiciones restrictivas o servidumbre en equidad, la decisión de la Junta de Apelación no anularía las condiciones restrictivas que fuesen inconsistentes con la autorización de uso otorgada a la recurrida.
IV
Por los fundamentos discutidos con anterioridad, CONFIRMAMOS la sentencia recurrida. El Juez Rivera Román concurre con el resultado.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Lie. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones