Luis Santaella y Robert R. Prann, demandantes y apelantes, *v.* Lucía Purón Marcos et als., demandados y apelados.

Núm. 8216.—*Sometido:* Mayo 1, 1942. *Resuelto:* Junio 10, 1942.

*Orlando J. Antonsanti,* abogado de los apelantes; *R. Díaz Collazo,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Por escritura número 327 de 22 de septiembre de 1903 ante el notario don Santiago R. Palmer Romaguera, la Asociación Cooperativa de Construcciones, Ahorros y Préstamos de Puerto Rico agrupó dos fincas de su propiedad, radicadas en la sección sur del barrio de Santurce de esta ciudad y por la misma escritura y con el objeto de urbanizar una porción de dicho terreno, segregó de la así agrupada, una finca urbana denominada Miramar, con una cabida de diez y nueve hectáreas, veintiocho áreas y once y media centiáreas, que dividió en manzanas marcadas con las letras A a P inclusives, más una manzana sin nombre destinada a sitio para hotel, con una superficie de siete mil metros cuadrados, imponiendo a los solares que componen dichas manzanas, entre otras restricciones, la descrita bajo la letra A en dicha escritura, que literalmente dice así:

"Ningún edificio, balcón, ventana, salida y otra construcción, excepto escaleras o gradas, se harán en los solares a menos de tres metros de distancia de la línea de su frente que da a la calle o avenida en que se encuentran situados."

La referida segregación, sujeta desde luego a las mencionadas restricciones, fué inscrita en el Registro de la Propiedad de San Juan el 9 de diciembre de 1903, al folio 158 del tomo 52 de la Capital, finca 2224, inscripción primera.

Los apelantes, dueños de solares en la manzana P de la citada urbanización, radicaron el 6 de abril de 1939 en la corte inferior una petición de *injunction* contra los apelados, alegando sustancialmente que éstos, dueños también de otro solar radicado en la misma manzana P de la Avenida Miramar esquina a Roosevelt, a mediados de febrero del citado año empezaron a construir y a la fecha de la radicación de la demanda continuaban construyendo en el referido solar

un edificio de viviendas múltiples en violación de la restricción anteriormente transcrita, toda vez que la distancia del frente del edificio a dichas calle y avenida era menor de tres metros. Solicitaron los demandantes apelantes la expedición de un auto de injunction perpetuo ordenando a los demandados apelados a demoler y remover aquella parte del edificio que estuviera situada dentro de los tres metros a que se refiere la restricción A, y que mientras se dictaba el injunction perpetuo se expidiese uno preliminar ordenando a los demandados, sus representantes, agentes o empleados, a suspender la continuación de dicha obra, y que se dictase una orden de entredicho (*restraining order*) mientras se expedía el injunction preliminar.

Los hechos de este caso, conforme los declaró probados la corte inferior y resultan de la exposición del caso, pueden resumirse así:

En los primeros días de febrero de 1939, los demandados empezaron la construcción del edificio en controversia, para lo cual previamente levantaron una valla de madera de nueve o diez pies de alto por el frente que da a la Avenida Miramar y por el de la Calle Roosevelt, emplazando el edificio, por el frente que da a la Avenida Miramar, a dos metros cincuenta y nueve centímetros de la línea de la Avenida, y por el de la Calle Roosevelt, a dos metros treinta y siete centímetros. La citada valla impedía apreciar desde el exterior la distancia a que de dichas vías públicas se emplazaba el edificio, pues aunque tenía dos aberturas por el frente de la Calle Roosevelt, sin embargo éstas se hallaban constantemente cerradas por medio de puertas o portones. Como no existía ningún rótulo que revelase los nombres de los dueños de la obra ni el del contratista y la valla no fué removida hasta que hubo de ponerse el "falsopiso" de la primera planta en los primeros días del mes de marzo siguiente, fué entonces que los peticionarios descubrieron la violación de la restricción y por medio del abogado Sr. O. Antonsanti, luego

de éste hacer una investigación en el Registro de la Propiedad, en el Departamento de Sanidad y en el de Obras Públicas de la Capital, allá por el 28 de marzo de 1939 dirigieron una carta al Sr. Juan Robledo Marcos, apoderado de los demandados apelados, advirtiéndole y protestando de la violación. Recibida esta carta por el Sr. Robledo, su abogado la contestó al día siguiente en representación de los demandados, limitándose a requerir del Sr. Antonsanti que informase quiénes eran sus clientes, para determinar el interés que tales personas pudieran tener en el asunto y que entonces tendrían una entrevista con el Sr. Antonsanti para determinar las pretensiones de sus representados. Dos o tres días después de recibida esta carta, el Sr. Antonsanti pudo comunicarse por teléfono con el Sr. Díaz Collazo, abogado de los demandados apelados, informándole en dicha ocasión que el Sr. Santaella era uno de sus clientes, solicitando entonces el Sr. Díaz Collazo que suspendiese sus gestiones por dos o tres días, a lo que accedió Antonsanti; pero habiendo comprobado este último que después de la conferencia continuaban trabajando de noche, procedió a radicar la petición de injunction el 6 de abril de 1939.

A base de tales hechos la corte inferior sostuvo en su resolución decretando el injunction preliminar, que la violación había quedado probada por la preponderancia de la prueba y por la declaración del propio Enrique Tizol, testigo de los demandados y arquitecto y contratista de la obra, llegando la corte inferior a la conclusión de que los peticionarios apelantes no habían incurrido en *laches* en la institución de la acción ni procedía tampoco contra ellos la defensa de *estoppel,* basada en que el peticionario Prann hubiera violado la restricción, toda vez que no se había probado dicha violación. También declaró la corte probado que la violación de la restricción perjudicaba el aspecto de la urbanización y depreciaba el valor de sus propiedades; que no se probó que se hubiera operado variación alguna en el plan general de la

urbanización de Miramar, sosteniendo finalmente el tribunal inferior que los demandados no eran personas "inocentes" que habían incurrido en gastos en la construcción de la obra cuando por sus propias actuaciones impidieron que los peticionarios pudieran actuar antes y que además a sabiendas violaron la restricción a que está afecto el solar donde construyeron.

A base de tales hechos la corte inferior dictó el injunction preliminar el 26 de mayo de 1939, y habiendo estipulado las partes el día siguiente que el injunction perpetuo fuese sometido por la misma prueba, el 5 de junio siguiente se dictó sentencia decretando el injunction perpetuo en los siguientes términos:

"La corte por los fundamentos de su relación del caso y opinión unida a los autos que se hace formar parte de la misma, declara sin lugar la petición en este caso, en tanto en cuanto por ella se solicita la demolición del edificio de los demandados, y con lugar la misma en cuanto a convertir en permanente el injunction preliminar decretado prohibiendo a los demandados continuar la construcción de dicho edificio en tal forma que pueda continuar violándose la restricción a que está sujeto el solar de los demandados, incluyendo honorarios de abogado los que se fijan en $300."

En la opinión que sirviera de base a dicha sentencia de 5 de junio de 1939, la corte hizo las siguientes consideraciones:

"Se ha probado, además, que si bien los demandados violaron la restricción se debió, según declaró el Sr. Tizol y no contradicho, a que al medir el ancho de la calle Roosevelt y Avenida Miramar, encontró que éstas no tenían los 12 metros y 15 metros, respectivamente, que debían tener, de acuerdo con el plano de la urbanización, y aunque no excusa dicha violación, por lo menos hace que no podamos decir que la misma haya sido de mala fe y sin excusa alguna.
"    .         .         .         .         .

"*En el caso de autos, sin embargo, somos de opinión que si bien los peticionarios tienen derecho a que el edificio de los demandados, que aun no se ha terminado, no se continúe construyendo en violación a la restricción, tomando en consideración todos los hechos del*

*caso, no consideramos que sea éste uno en el que debamos ejercitar
nuestra discreción en equidad ordenando la demolición del edificio
de los demandados.* No es que comparemos y pesemos los daños que
se puedan ocasionar a los demandados con los que se hayan ocasio-
nado a los demandantes, ya que, como se dijo en el caso de Lawton,
supra, ése no es un elemento indispensable, sino que *consideramos que
decretar un injunction mandatorio en este caso sería un acto opre-
sivo y poco equitativo bajo todos los hechos probados. Los derechos
de los peticionarios han sido reconocidos al prohibirse a los deman-
dados continuar construyendo el edificio en tal forma que cualquier
parte del mismo que aun le falta pueda hacerse violando la restric-
ción.''* (Bastardillas nuestras.)

■ Asumiendo que en efecto el Sr. Tizol hubiese encon-
trado al medir las calles en cuestión que éstas no tenían el
ancho que se dice en el plano de urbanización, en tal caso,
siendo más estrechas las calles, la zona de tres metros nece-
sariamente debió penetrar más en el solar y por consiguiente
el edificio debió quedar emplazado a una distancia mayor de
tres metros y no menor como resultó en realidad.

Revela además la evidencia que con anterioridad a la obra
de los demandados el mismo contratista Sr. Tizol construyó
en la misma Avenida Miramar, como a dos cuadras del solar
de los demandados apelados, un edificio que también fué em-
plazado en violación a la restricción, lo que le trajo graves
dificultades a su dueña, contra quien, por ser viuda, los inte-
resados acordaron no instar acción alguna en los tribunales.

■■ La propia corte inferior, al fundamentar su resolu-
ción decretando el injunction preliminar, como hemos dicho
anteriormente, sostuvo que los demandados no podían consi-
derarse personas ''inocentes'', imputándoles que habían vio-
lado la restricción a sabiendas y que impidieron que los de-
mandantes apelantes pudieran actuar antes de la fecha en
que lo hicieron.

No vemos cómo, en tales circunstancias, podría justificarse
el supuesto error alegado por el Sr. Tizol. Tampoco pode-
mos convenir con la corte inferior en que ''los derechos de
los peticionarios han sido reconocidos al prohibirse a los de-

mandados continuar construyendo el edificio en tal forma que cualquier parte del mismo que aún le falta pueda hacerse violando la restricción.''

Levantadas las paredes en cuestión dentro del área prohibida, quedan por ese solo hecho violados los derechos de los peticionarios, y la violación sigue y persiste mientras no se remuevan dichas paredes. Preferible sin duda sería para los peticionarios apelantes que el edificio fuese terminado con arreglo a los planos originales antes que permitir que sobre el solar permaneciese sin terminar.

Desde que se resolvió el caso de *Glines* v. *Matta et al.*, 19 D.P.R. 409, este tribunal ha venido sosteniendo la validez de tales restricciones y el derecho de los perjudicados a que los que adquieran solares sujetos a las mismas cumplan estrictamente con ellas. En el citado caso este tribunal confirmó la sentencia de la corte inferior que ordenó la demolición de ciertos garages construídos en violación de la restricción, precisamente en la misma urbanización de Miramar. Parece conveniente consignar aquí la cita que de la sección 1342 de la obra Pomeroy *Equity Jurisprudence* se hizo por este tribunal a la página 416 de la opinión:

''Artículo 1342. *Condiciones restrictivas que crean servidumbres en equidad.*—Esta doctrina ha sido ya examinada y se ha mostrado que las cláusulas restrictivas contenidas en escrituras, arrendamientos y convenios que limitan el uso del terreno de modo específico, o que determinan un uso particular que crea servidumbres en equidad sobre la finca, podrán ser ejercitadas específicamente en equidad, por medio de un injunction no solamente entre las partes directamente interesadas, sino también entre los subsiguientes compradores que tengan conocimiento del caso, aun cuando las restricciones no sean de la clase que técnicamente van unidas a la propiedad. Por supuesto, el injunction en esta clase de casos se concede generalmente por el incumplimiento de la cláusula restrictiva. La cuantía de los daños y perjuicios y hasta el hecho de que el demandante haya sufrido perjuicios pecuniarios son cuestiones completamente inmateriales. Uno de los modernos jueces más competentes en equidad ha dicho: 'Ha quedado bien establecido por las autoridades, que hay

suficiente causa que justifique a la corte en su intervención, si ha habido una infracción de las condiciones. No es a la corte, sino a los demandantes a quienes incumbe estimar la cuantía de los daños que se originan del perjuicio causado a los mismos. Desde el momento en que la corte ve que ha existido un incumplimiento de las condiciones restrictivas, eso constituye un perjuicio, y la corte no tiene derecho a estimarlo, ni a negar el derecho del demandante al cumplimiento específico de su contrato, aunque su remedio es aquél a que se ha hecho referencia, o sea el injunction.' ''

Posteriormente, en el caso de *Lawton* v. *Rodríguez,* 35 D.P.R. 487 y 38 D.P.R. 38, se ordenó la demolición de la parte de una casa en Carrion's Court construída en violación de una restricción análoga a la que nos ocupa, habiéndose invertido en la construcción de aquella obra alrededor de $4,000. En el primero de los dos casos últimamente citados, se dijo a la página 500:

"El daño, por consiguiente, no es un elemento que fuera indispensable comparar y pesar en el caso. Se ha sostenido en consonancia con nuestra ley de injunctions y la doctrina sentadada en el caso de *Glines* que el mero hecho de que se falte al contrato es suficiente fundamento para la intervención de las cortes por injunction; el comprador tiene derecho a gozar y disfrutar de la propiedad en la forma y modo estipulado y no es contestación decir que el acto del cual un demandante se queja, no le inflige ningún daño o no le reportará beneficio alguno."

Véase al mismo efecto el caso de *Joyce* v. *Krupp* (Cal. 1927), 257 P. 124, donde se dijo:

"Cuando se solicita remedio en equidad, la prueba de daños reales o perjuicios sustanciales no es esencial, siendo necesario solamente demostrar una violación de la restricción para que el demandante tenga derecho al remedio solicitado."

Véase también el caso de *Macatee* v. *Biascoechea,* 37 D. P.R. 1, donde igualmente se dictó un auto de injunction para impedir la violación de otra de las restricciones a que están sujetos los solares de Miramar, restricción que prohibe que las edificaciones en dichos solares se destinen a establecimientos mercantiles o industriales.

*Por lo expuesto procede declarar con lugar el recurso y en su consecuencia modificar la sentencia apelada en el sentido de que debe declararse con lugar la demanda y dictarse un auto de injunction mandatorio ordenando a los demandados a destruir y remover aquellas partes del edificio construídas sobre el área prohibida por la restricción que dan frente a la Avenida Miramar y a la Calle Roosevelt, para lo cual se concederá a los demandados apelados un término de noventa días contados a partir de la fecha en que se reciba el mandato de este tribunal en la corte inferior, y así modificada, debe confirmarse la sentencia en sus demás pronunciamientos.*

Los Jueces Presidente Sr. Del Toro y Asociado Sr. Todd, Jr., no intervinieron.