Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton,
a la cual se une el Juez Asociado Señor Rivera Pérez.
En noviembre de 2007, por el Tribunal estar igualmente dividido, confirmamos la sentencia del Tribunal de Apela-ciones que dejó sin efecto la paralización provisional de las obras de construcción de la Asociación de Fomento Educa-tivo, Inc. Véase Asoc. Villa Caparra Sur v. Fomento Educ., 172 D.P.R. 557 (2007). A raíz del fallecimiento del compa-ñero Juez Asociado Señor Fuster Berlingeri, una mayoría acoge la solicitud de reconsideración presentada por la Asociación de Vecinos Villa Caparra Sur, Inc. y reinstala el injunction preliminar dictado por el foro de instancia bajo el fundamento de que éste es un recurso ordinario, exi-miendo a estos últimos de cumplir con el pago de la fianza correspondiénte conforme a la Regla 57.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Por entender que un injunction para vindicar una servidumbre en equidad es un recurso extraordinário que requiere el pago de fianza previa y que, por lo tanto, no procede la mencionada reinstalación, disentimos.
*337 I
Los hechos y el transcurso procesal un tanto acciden-tado de este caso ya han sido objeto de discusión por este Tribunal en la sentencia emitida en Asoc. Villa Caparra Sur v. Fomento Educ., supra. En la moción de reconsidera-ción presentada por la Asociación de Vecinos de Villa Caparra Sur, Inc. (Asociación de Vecinos), ésta alega que al caso dé autos le aplica la Regla 56 de Procedimiento Civil (Regla 56), 32 L.P.R.A. Ap. III, sobre remedios provisiona-les en aseguramiento de sentencia, la cual faculta a los tribunales a expedir órdenes para hacer o desistir de hacer cualquier acto en específico y a eximir al peticionario del requisito de fianza en determinadas circunstancias. Réglas 56.3 y 56.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Dicha afirmación en esta etapa procesal es realmente sor-prendente y preocupante, pues en esencia invocan ante nos un remedio que nunca solicitaron en el foro de instancia.
De los autos se desprende que en todo momento la soli-citud de la Asociación de Vecinos ante el Tribunal de Pri-mera Instancia para hacer valer la servidumbre en equi-dad de la urbanización Villa Caparra Sur iba dirigida a que se concediera un injunction preliminar conforme a los criterios específicos y extraordinarios establecidos por la Regla 57 de Procedimiento Civil (Regla 57), 32 L.P.R.A. Ap. Ill, y la Ley de Injunction de 8 de marzo de 1906 (32 L.P.R.A. sees. 3521-3533). En efecto, el foro, de instancia expidió una orden de injunction preliminar para ordenar la paralización de la obra de construcción de la Asociación de Fomento Educativo (AFE) al amparo de la referida Regla 57 y los criterios extraordinarios que establece la ley y la jurisprudencia pertinente para este remedio, y no como un remedio provisional ordinario en aseguramiento de senten-cia al amparo de la Regla 56.
No obstante, el tribunal de instancia acudió a la Regla 56 únicamente para eximir a la Asociación de Vecinos del *338 requisito de fianza correspondiente que ineludiblemente, y sin excepción alguna, impone la Regla 57.3 ante la expedi-ción de un injunction preliminar de esta naturaleza. Es decir, el juez de instancia trasladó arbitrariamente las ex-cepciones a la fianza que provee la Regla 56.3 para los re-medios ordinarios en aseguramiento a un “injunction” pre-liminar de carácter extraordinario, con el propósito de relevar a la Asociación de Vecinos de la prestación de fianza previa conforme a lo requerido por la Regla 57, requisito que los demandantes hubiesen podido cumplir con gran fa-cilidad y que no era oneroso para ellos.
La posición asumida por la Asociación de Vecinos, y hoy acogida por una mayoría de este Tribunal para reinstalar el injunction preliminar, atenta contra la seguridad jurí-dica de nuestro ordenamiento, desvirtúa la intención legis-lativa de las Reglas de Procedimiento Civil e ignora los rasgos divergentes del injunction y de los remedios provi-sionales en aseguramiento de sentencia, así como el desa-rrollo histórico y doctrinal de ambas figuras procesales en nuestro estado de derecho. Asimismo, la opinión en recon-sideración es contraria a nuestro sistema procesal centena-rio y altera la ley en referencia al injunction y los demás remedios provisionales por fíat judicial. Ello, en detri-mento del debido proceso de ley y los derechos sustantivos de la AFE, que ostenta indudablemente un interés propie-tario sobre la construcción en controversia.
La opinión del Tribunal parte de la premisa equivocada que tanto la Regla 56 como la Regla 57 de Procedimiento Civil proveen indistintamente para la concesión de una or-den de hacer o desistir de hacer como remedio en asegura-miento de sentencia mediante una duplicidad de mecanis-mos redundantes. Sin embargo, un análisis riguroso de estas figuras procesales apunta claramente a que ambas siempre han sido consideradas como remedios distintos y delimitados por nuestro ordenamiento procesal desde co-mienzos del siglo pasado. Veamos.
*339 II
A. A finales del siglo diecinueve, el ordenamiento pro-cesal civil en Puerto Rico se regía por la Ley de Enjuicia-miento Civil española de 1881, cuya aplicación se hizo ex-tensiva a Puerto Rico en 1886. Véase D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Facultad de Derecho U.I.P.R., 1996, pág. 8. El Título XTV de la referida ley establecía varios remedios provisionales para el asegu-ramiento de sentencias. No obstante, este esquema proce-sal no contaba con un recurso análogo al injunction, pues dicha figura era ajena a la tradición civilista(1) Tras pro-ducirse el cambio de soberanía en 1898, el injunction —un remedio que proviene del sistema de equidad del “common law”— se incorporó al sistema de derecho puertorriqueño por primera vez el 1 de marzo de 1902, mediante la Ley para Autorizar los Interdictos Prohibitorios (Injunctions)(2) Id. Curiosamente, ese mismo día la Asamblea Le-gislativa también aprobó la Ley Para Asegurar la Efectivi-dad de las Sentencias, la cual incorporó y estructuró los remedios provisionales en aseguramiento de sentencia, de manera similar a lo dispuesto en el Título XIV de la Ley de Enjuiciamiento Civil Española de 1886 (32 L.P.R.A. see. 1070 (derogada)).
Poco después se reformuló la figura del injunction me-diante la Ley de 8 de marzo de 1906, la cual derogó la Ley de 1 de marzo de 1902 para autorizar los injunctions. 32 *340 L.P.R.A. secs. 3521-3533. Dicha ley, la cual aún está vi-gente, constituyó una enmienda al Código de Enjuicia-miento Civil de 1904, que a su vez sustituyó en su totali-dad el ordenamiento procesal instituido por la Ley de Enjuiciamiento Civil Española de 1886.
Por su parte, el Art. 3 de la referida Ley de Injunction de 1906 requiere que el demandante demuestre que el acto que se quiere paralizar ocasionaría daños irreparables o que el peticionario carece de un remedio adecuado en ley. Véase 32 L.P.R.A. see. 3523(2) y (4). Desde ese momento, y hasta hoy, este Tribunal se remitió expresamente a los principios tradicionales de la equidad del “common law” para interpretar la figura del injunction como un recurso extraordinario, independiente y separado al remedio provisional de hacer y no hacer. Véanse: Franco v. Oppenheimer, 40 D.P.R. 153 (1929); Glines et al. v. Matta et al., 19 D.P.R. 409 (1913); Rivé Rivera, op. cit., págs. 9 y 17-20.
Esta dicotomía legislativa entre el injunction provisto por el Código de Enjuiciamiento Civil y los remedios provi-sionales reconocidos por la Ley Para Asegurar la Efectivi-dad de las Sentencias de 1902 —que al igual que la Regla 56 permitía a los tribunales emitir órdenes de hacer y no hacer— condujo a este Tribunal a tratar de delimitar el alcance y la interacción entre ambos estatutos. En Municipio v. Corte, 40 D.P.R. 37, 39 (1929), expresamos que aun cuando algunas de las disposiciones de ambas leyes tenían el mismo objetivo, la Ley Para Asegurar la Efectividad de las Sentencias de 1902 no se debía interpretar “para susti-tuir la ley de injunction y evadir sus limitaciones”.
Varias décadas después, en 1943, se aprobaron unas Re-glas de Enjuiciamiento Civil que eran básicamente una traducción de las Reglas de Procedimiento Civil federales. 32 L.P.R.A. Ap. I (derogado); Guzmán, Juarbe v. Vaquería Tres Monjitas, supra. No obstante, el nuevo cuerpo proce-sal no derogó el Código de Enjuiciamiento Civil de 1904 —ni, por lo tanto, la Ley de Injunction de 1906— provo- *341 cando confusión y tensión entre varias normas que regula-ban las mismas figuras e instituciones de manera paralela y conflictiva. En lo pertinente, el injunction se regulaba por los Arts. 676-689 del Código de Enjuiciamiento Civil y por la nueva Regla 65 de Enjuiciamiento Civil sin que se estableciera cuál prevalecería en caso de discrepancia. A su vez, los demás remedios provisionales —incluyendo los re-medios subsidiarios de hacer y no hacer en aseguramien-to— aún se regían por la Ley Para Asegurar la Efectividad de las Sentencias de 1902. Véase Rivé Rivera, op. cit., pág. 9.
Para atender la confusa dicotomía establecida por el or-denamiento procesal de aquel momento, este Tribunal nombró un Comité. Consultivo en 1952 con la tarea de re-dactar una legislación procesal civil integrada que sustitu-yera ambos cuerpos procesales. Rivé Rivera, op. cit. Dos años más tarde, dicho comité sometió un informe con un proyecto de reglas de procedimiento civil que proponía la fusión del injunction con los demás remedios provisionales en aseguramiento de sentencia, mediante la. disposición que hoy conocemos como la Regla 56. Véase Comité Con-sultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, Borrador del Proyecto de Reglas de Enjuiciámiento Civil, Tribunal Supremo, 1954. En los comentarios del mencionado borrador, el Comité adujo lo siguiente en cuanto a la coexistencia hasta ese momento de la Ley para Asegurar la Efectividad de las Sentencias de 1902 y la Ley de Injunction de 1906 (Art. 677 del Código de Enjuicia-miento Civil):
La existencia de estas dos disposiciones legales ha motivado gran confusión según revela nuestra jurisprudencia. Cuando por un lado se ha solicitado por un reclamante una orden del tribunal para que la otra parte se abstenga de hacer determi-nados actos, basándose en las disposiciones de la Ley Para Asegurar la Efectividad de las Sentencias, el tribunal ha sos-tenido que dicha medida no procede porque equivale un injunction. Cuando por el contrario se ha solicitado la misma medida basándose en la ley de injunction, se ha sostenido por *342 el tribunal que la misma no procede porque existe un remedio adecuado en ley. (Citas omitidas). Comité Consultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, supra, págs. 146-147.
La propuesta presentada por el Comité Consultivo tenía la intención de cambiar el enfoque del ordenamiento pro-cesal en cuanto a los referidos remedios, con una norma-tiva amplia y abarcadora que concediera a los tribunales la facultad de expedir cualquier orden provisional para ase-gurar la sentencia en cualquier pleito. Comité Consultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, supra. A diferencia de la interpretación normativa sobre el injunction hasta ese momento, el Comité proponía que se conce-diera dicho remedio al amparo de la Regla 56 exclusiva-mente sin la necesidad de que el demandante demostrara que carecía de lo que en equidad se conoce como un “reme-dio adecuado en ley” y sin que se tuviera que ponderar la aplicación de criterios extraordinarios como la posible irre-parabilidad de los daños alegados o el posible impacto en el interés público. A la luz de ello, el Comité también propuso la derogación de la Ley de Injunction de 1906 y la Regla 65 de Enjuiciamiento Civil, salvo algunos articulados para guiar su expedición, pues entendía que el injunction no debía tener un carácter verdaderamente extraordinario. Véanse: Comité Consultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, supra, págs. 141-144 y 175; Rivé Rivera, op. cit., pág. 12.(3)
No obstante lo anterior, este Tribunal no acogió plena-mente las recomendaciones del Comité Consultivo mencio-nadas anteriormente. Específicamente, rechazó la pro- *343 puesta de que la Regla 56 debía ser el mecanismo exclusivo para conceder cualquier remedio provisional. Aunque el Tribunal aprobó la Regla 56.5 de Procedimiento Civil, supra, para facultar a los tribunales a expedir órdenes de hacer o desistir de hacer en aseguramiento de sentencia, entendió que el “injunction” ameritaba su propio articulado para supuestos en que fuese imprescindible acudir a su na-turaleza particular y extraordinaria. Por lo tanto, al apro-bar las Reglas de Procedimiento Civil y remitirlas a la Asamblea Legislativa el 13 de enero de 1958, este Tribunal incluyó una regla específica sobre “injunctions” —a saber, la Regla 57— tomada literalmente de la Regla 65 de Pro-cedimiento Civil federal.
Dichas reglas no fueron enmendadas por la Legislatura, por lo que entraron en vigor el 31 de julio de 1958 según las redactó y aprobó el Tribunal Supremo, de acuerdo con lo dispuesto por el Art. V, Sec. 6 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1999. Como resultado, las Reglas de Procedimiento Civil aprobadas por este Tribunal en 1958 tuvieron el efecto de flexibilizar los remedios provisionales en aseguramiento, pero perpetuaron la dicotomía histórica entre éstos y el injunction. Reglas de Procedimiento Civil de 1958 (32 L.P.R.A. Ap. II, Rs. 56 y 57). Por otro lado, la última revi-sión de las Reglas de Procedimiento Civil que se llevó a cabo en 1979 no alteró dicho ordenamiento. Reglas de Pro-cedimiento Civil de 1979 (32 L.P.R.A. Ap. Ill, Rs. 56 y 57).
Así, pues, se mantuvo incólume la posición de que para obtener un injunction como remedio principal y extraordi-nario hay que recurrir forzosamente a la Regla 57, aun desde su etapa preliminar. De hecho, la Regla 55 del refe-rido cuerpo procesal establece que “[l]a expedición de un injunction se regirá por lo dispuesto en la Regla 57 y en las leyes especiales aplicables”. 32 L.P.R.A. Ap. III. Obvia-mente, dicho mandato no estaba incluido en las recomen- *344 daciones del Comité Consultivo de 1954.(4) Véase, además, Corujo Collazo v. Viera Martínez, 111 D.P.R. 552, 556 (1981).
Por lo tanto, y contrario a lo que concluye la opinión del Tribunal, los comentarios del mencionado Comité no pue-den ser utilizados como fundamento de la intención legis-lativa de las Reglas de Procedimiento Civil de 1958 en cuanto a los remedios provisionales y el injunction. Ello es más evidente dado que este Tribunal descartó la recomen-dación de derogar la Ley de Injunction de 1906 y la Regla 65 de 1943, al añadir la Regla 57 para regular de forma expresa el injunction preliminar como un remedio provisional extraordinario, y el injunction permanente como un re-medio principal extraordinario. Así las cosas, se desprende del registro histórico que este Tribunal no siguió las reco-mendaciones del Comité en referencia a esta normativa, pues formuló un esquema que le confirió nuevamente a los tribunales dos mecanismos paralelos e independientes para, implantar su facultad de conceder remedios provisio-nales, dependiendo de la naturaleza de la acción incoada.
B. Por otro lado, nuestros pronunciamientos sobre el injunction preliminar —incluso los posteriores a la aproba-ción de este esquema procesal— han sido consecuentes en remitirse a la normativa federal y a los criterios de equi-dad del “common law” que rigen este recurso extra-ordinario. En P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975), aclaramos que al decidir si expide o deniega un injunction preliminar, el tribunal de instancia debe considerar: la naturaleza de los daños que puedan ocasionarse de expedir o denegar el recurso; la irreparabi-lidad de los daños o la ausencia de un remedio adecuado en ley; el balance comparativo entre dicho daño y el que se le *345 causará a la otra parte de dejar sin efecto la paralización; la probabilidad de que la controversia se torne académica; la probabilidad de que él promovente prevalezca en los mé-ritos, y el posible impacto sobre el interés público. Véanse, además: Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 679-680 (1997); Mun. de Ponce v. Gobernador, 136 D.P.R. 776 (1994); Cobos Liccia v. DeJean Packing Co., Inc., 124 D.P.R. 896, 902 (1989); Systema de P.R., Inc. v. Interface Int'l, 123 D.P.R. 379 (1989); A.P.P.R. v. Tribunal Superior, 103 D.P.R. 903, 906 (1975).(5)
Así las cosas, resulta evidente que la Regla 57 se incor-poró a nuestro ordenamiento para regular el injunction preliminar y permanenté, respectivamente, como recursos extraordinarios, guiados por los criterios derivados de la equidad en virtud de las propias leyes relacionadas al injunction. De acuerdo con ello, en esta ocasión reiteramos que las disposiciones estrictas de la Regla 57 y su jurispru-dencia aplicable le aplican a todo litigante que solicita un injunction como remedio principal, las cuales —en lo per-tinente— siempre exigen la prestación de fianza para su concesión en la etapa preliminar y cuyas órdenes ex parte tienen un término de vigencia máxima de veinte días. Re-gla 57.3 de Procedimiento Civil, supra.
Al examinar esta dicotomía procesal, el profesor Rafael Hernández Colón comenta que la Regla 57.3 de Procedi-miento Civil, supra, no trata al injunction preliminar como una medida de aseguramiento de sentencia, por lo que “exige que cuando se solicita una orden o injunction preli-minar, el solicitante tiene que prestar fianza para garanti-zar los daños y perjuicios que püeda causar ese injunction. Esta regla establece un procedimiento especial para ejecu-tar la fianza y no está sujeta a las excepciones de la R. *346 56.3, 1979 [respecto a los remedios provisionales]”. R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 4ta ed., San Juan, Lexisnexis de Puerto Rico, 2007, See. 1504, págs. 159-160.
Por otra parte, reconocemos nuevamente que si lo que el demandante solicita es una “orden de no hacer” como re-medio subsidiario, o cualquier otro remedio provisional en aseguramiento de sentencia de acuerdo con la Regla 56.5 de Procedimiento Civil, supra, ésta puede acogerse a los requisitos más flexibles contenidos en esta última regla, la cual permite emitir dichas órdenes sin fianza y sin límites de tiempo. Rivé Rivera, op. cit., pág. 15. Es decir, si la so-licitud del remedio se plantea en una demanda cuyo objeto principal es el injunction mismo, rige la Regla 57 de forma expresa y específica, y no se podría admitir excepción al-guna al requisito de fianza previa. A su vez, si se solicita una orden de hacer o no hacer como remedio supletorio para asegurar la sentencia en el contexto de un pleito cuyo objeto principal no es la concesión de un injunction, se pue-den aplicar las disposiciones más flexibles de la Regla 56, incluyendo las excepciones para el requisito de fianza que establece la referida Regla 56.3. Hernández Colón, op. cit., See. 5704, pág. 464.(6)
A la luz de lo anterior, la concesión del remedio provisional correspondiente depende del objetivo principal de la *347 demanda que, a su vez, tiene que circunscribirse a la regla procesal aplicable según las circunstancias concretas y particulares de cada caso. De lo contrario, se estaría de-jando al arbitrio del tribunal de instancia la aplicación de cualquiera de las dos reglas, a pesar de que el legislador y este Tribunal Supremo expresamente vislumbraron una clara distinción entre ambas normativas procesales al aprobar las Reglas de Procedimiento Civil de 1958 y de 1979.
III
Del historial anteriormente discutido es evidente que éste es el derecho positivo vigente y debería ser la ley en este caso, donde los derechos propietarios de las partes es-tán en controversia. De hecho, esta dicotomía entre el injunction y los demás remedios provisionales forma parte de las Reglas de Procedimiento Civil aplicables a este caso, por lo que una actuación judicial que contravenga sus pro-pósitos sería inválida y revisable de su faz. Es por ello que cambiar las reglas del juego desde este estrado apelativo constituye una violación por este Tribunal a principios bá-sicos y fundamentales de la seguridad jurídica en nuestro ordenamiento, cimentados en la garantía constitucional del debido proceso de ley.
Sabido es que el Art. II, Sec. 7 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, al igual que las Enmiendas V y XIV de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley. En lo pertinente, el debido proceso de ley procesal im-pone al Estado y a los tribunales la obligación de garanti-zar que la interferencia con los intereses de libertad y pro-piedad del individuo se haga a través de un procedimiento que sea justo, imparcial y equitativo. Véanse: Rivera Ro *348 driguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887-888 (1993); López Vives v. Policía de P.R., 118 D.P.R. 219 (1987).
Para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. Rivera Rodríguez & Co. v. Lee Stowell, etc., supra; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 274 (1987). Una vez se cumple esta exigencia, hay que determinar cuál es el pro-cedimiento exigido por el ordenamiento vigente. Rivera Rodríguez & Co. v. Lee Stowell, etc., supra; Rivera Santiago v. Srio. de Hacienda, supra. Aunque diversas situaciones pueden requerir diferentes tipos de procedimientos, en todo momento prevalece el requisito general de que el pro-ceso gubernamental o judicial debe ser justo e imparcial. Rivera Rodríguez & Co. v. Lee Stowell, etc., supra; Rivera Santiago v. Srio. de Hacienda, supra.
En Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, pág. 888, adoptamos los tres criterios que deben sopesarse al determinar cuál es el proceso para privar a un individuo de algún derecho protegido, conforme a lo establecido por el Tribunal Supremo federal en Mathews v. Eldridge, 424 U.S. 319 (1976). A saber, éstos son los siguientes: (1) se debe determinar cuáles son los intereses individuales afec-tados por la acción oficial; (2) el riesgo de una determina-ción errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garan-tías adicionales o distintas, y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. Véase, además, Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982).
A su vez, este Tribunal ha reconocido que los requisitos constitucionales del debido proceso de ley aplican a los pro-cedimientos de embargo y prohibición de enajenar. Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, pág. 890; Domínguez Talavera v. Tribunal Superior, 102 D.P.R. 423 (1974). En Rivera Rodríguez & Co. v. Lee Stowell, etc., su *349 pra, afirmamos que cuando un acreedor usa los mecanis-mos provistos por el Estado para tomar posesión de una propiedad de su alegado deudor, este último es privado de un interés constitucional significativo de propiedad. Al Es-tado establecer procedimientos de embargo para que una persona los utilice para inmiscuirse en la propiedad ajena mediante las Reglas de Procedimiento Civil, se configura un “state action” sustancial que justifica la aplicación de la cláusula del debido proceso. Asimismo, para salvaguardar la garantía al debido proceso de ley cuando la parte de-mandante intenta interferir con el interés propietario de la parte demandada a través de la Regla 56, es imprescindi-ble la celebración de una vista plenamente evidenciaría conforme a los rigores procesales de, la referida cláusula constitucional.
De manera análoga, es menester concluir que un injunction para vindicar una servidumbre en equidad se debe regir por las exigencias constitucionales del debido proceso de ley. Para hacer valer una condición restrictiva se utilizan los mecanismos del Estado —a saber, el injunction— frente a un interés propietario. El remedio provisional del “injunction” preliminar para tales propósitos tiene las mismas repercusiones que una orden de embargo, pues existe una probabilidad peligrosa de que una determina-ción errónea prive al dueño de su interés propietario sobre el bien. Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, pág. 898. Asimismo, el requisito de fianza previa a la expe-dición de un “injunction” preliminar—según requiere cla-ramente la Regla 57.3 de Procedimiento Civil, supra—forma parte integral de las garantías del debido proceso que ordenan nuestras reglas procesales.
Por lo tanto, la expedición de un injunction preliminar para hacer valer una servidumbre en equidad sin requerir fianza previa aumenta los riesgos de que el tribunal de instancia emita una determinación errónea que prive in-justamente al dueño del disfrute sobre su propiedad, sin *350 que se provea garantía alguna de que la parte demandante responderá por los daños ocasionados de no prevalecer fi-nalmente en el pleito. Ello en vista de que el mero examen preliminar por el juez de instancia de las alegaciones y la prueba, en esa etapa prematura de los procedimientos, no es suficiente para que éste pueda hacer una apreciación realista y contundente al expedir el injunction sin la ga-rantía colateral de la fianza previa que ordena nuestro or-denamiento procesal, en cumplimiento con la exigencia constitucional del debido proceso de ley.
IV
En el presente caso, se desprende del expediente que la finalidad principal de la demanda es la concesión de un injunction permanente contra la obra de construcción de la AFE para hacer valer una servidumbre en equidad. En todo momento se formuló la solicitud de injunction.preli-minar y permanente al amparo de la Regla 57, por lo que la Asociación de Vecinos la presentó bajo los parámetros de un recurso extraordinario con el propósito de vindicar las condiciones restrictivas que gravaban los predios de la urbanización.
Asimismo, el tribunal de instancia acogió la solicitud al amparo de la mencionada Regla 57 y fundamentó su reso-lución ordenando la paralización de la obra al amparo de la naturaleza extraordinaria de la figura del injunction, in-cluso ponderando los requisitos estrictos de daño irreparable y falta de remedio adecuado en ley, así como la proba-bilidad de prevalecer en el pleito y la probabilidad de que la causa de acción se tornara académica, la naturaleza de los daños y el posible impacto que el remedio tendría en el interés público. Claramente, el tribunal de instancia resol-vió al amparo de la Regla 57 al expedir el injunction preliminar. Independientemente de la procedencia del re-medio dictado, dicho foro se equivocó al acudir a la Regla *351 56.3 de Procedimiento Civil únicamente con el propósito de eximir a la Asociación de Vecinos del requisito de fianza previa, en claro menosprecio del desarrollo histórico y ju-risprudencial de nuestro ordenamiento procesal.
No obstante, consciente del error cometido por el foro de instancia, una mayoría de este Tribunal permite el abuso de discreción en que incurrió el juez de instancia de no requerir la prestación de fianza previa e invoca una nueva norma de derecho procesal. Al así hacerlo, emite un nuevo tipo de injunction para vindicar una servidumbre en equi-dad al palio exclusivo de la Regla 56 de Procedimiento Civil. Ello, a pesar de que claramente estamos ante la etapa preliminar de un injunction permanente y extraor-dinario para vindicar una servidumbre que irremediable-mente se tiene que regir por los criterios extraordinarios de la referida Regla 57 y de la Ley de Injunction de 1906. Veamos.
A. Las condiciones restrictivas en urbanizaciones —o las servidumbres en equidad, figura objeto de la controver-sia medular en el caso de autos— fueron reconocidas por este Tribunal al ejercer la función en equidad que provee la mencionada Ley de Injunction de 1906, y no al amparo del remedio provisional de “no hacer” que instituía la Ley para Asegurar la Efectividad de Sentencias de 1902. Glines et al. v. Matta et al., supra. Posteriormente, al discutir el desarrollo histórico de la mencionada figura en nuestro sistema de derecho, expresamos que
... aunque el injunction es en principio un medio procesal para hacer valer las determinaciones judiciales, en lo referente a las cargas reales de urbanización sirve de base a las reglas de carácter sustantivo vigentes en nuestro derecho. Así se com-prueba que todavía hoy día el derecho sustantivo brota y se desarrolla por los intersticios del procedimiento. De aquí que en Puerto Rico las restricciones al derecho de propiedad im-puestas sobre terrenos que van a ser urbanizados no se consi-deran servidumbres prediales sujetas a lo dispuesto en el Có-digo Civil en relación con éstas. Son servidumbres que se regulan por los principios de equidad del derecho angloameri- *352 cano siempre que éstos no estén en conflicto con las leyes vigentes en nuestro país. (Énfasis suplido.) Colón v. San Patricio Corporation, 81 D.P.R. 242, 253- 254 (1959).
La primacía del carácter extraordinario que rige el injunction para hacer valer una servidumbre en equidad ha sido evidente desde que se incorporó dicha figura a nuestro ordenamiento. No obstante, hemos expresado que para ha-cer valer una condición restrictiva de esta índole no es ne-cesario probar daños reales o perjuicios sustanciales, pues sólo se precisa demostrar una violación a la restricción. Asimismo, cabe señalar que todos esos casos se dieron en el contexto de un injunction permanente o un injunction pre-liminar consolidado con un injunction permanente. Véanse: Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346 (1986); Colón v. San Patricio Corporation; supra; Santaella v. Purón, 60 D.P.R. 552 (1942); Glines et al. v. Matta et al., supra.
Como es sabido, el injunction permanente no requiere fianza. A su vez, en aquellas ocasiones nunca discutimos la aplicación de la Reglas 56 ó 57 de Procedimiento Civil (o su equivalente estatutario al momento de los hechos, a saber: la Ley para Asegurar la Efectividad de las Sentencias de 1902 o la Ley de Injunction de 1906)), pues al concederse un injunction permanente, tal diferenciación procesal era inconsecuente. Esta norma especial creada por nuestra ju-risprudencia tuvo el efecto de flexibilizar los criterios para conceder un injunction permanente en los casos de servi-dumbre en equidad, mas no de sustituir la aplicación de la Regla 57 por la Regla 56, y mucho menos en casos de injunction preliminar que se tutelan expresamente por las Reglas 57.1 y 57.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III.
A la luz de tales pronunciamientos sobre la vindicación de una servidumbre en equidad mediante un injunction permanente, la mayoría de este Tribunal pretende eliminar *353 —para casos de esta naturaleza— el requisito de estable-cer la existencia de daño irreparable o la ausencia de un remedio adecuado en ley, el cual hemos reconocido para los injunctions preliminares en general. Véase P.R. Telephone Co. v. Tribunal Superior, supra. En vista de lo anterior, la opinión mayoritaria concluye que en esos casos “el injunction preliminar se convierte en un remedio ordinario que se divorcia de los requisitos tradicionalmente asociados a la dicotomía entre ley y equidad, y adquiere una flexibili-dad que lo desvincula de dicho pasado”. Opinión mayorita-ria, pág. 322. Además, resuelve que dado que el injunction permanente está disponible como un remedio ordinario, la solicitud presentada por la Asociación de Vecinos se debe tramitar exclusivamente al amparo de la Regla 56. Véase íd., pág. 323.
Disentimos con firmeza de dicha interpretación, pues la mera existencia de la figura de la servidumbre en equidad se debe, precisamente, a la falta de un remedio adecuado en ley para hacer valer la condición restrictiva. Es por ello que en Glines et al. v. Matta et al., supra —el caso en donde este Tribunal reconoció por primera vez las servidumbres en equidad— concedimos el remedio al amparo de la Ley de Injunction de 1906 y los criterios extraordinarios deri-vados de la equidad por virtud de la propia ley, que es el precedente de la actual Regla 57 de Procedimiento Civil. Nunca discutimos en ese caso —ni en ningún otro caso posterior sobre condiciones restrictivas— la posible aplica-ción de la Ley Para Asegurar la Efectividad de las Senten-cias de 1902, la cual al igual que la Regla 56, proveía un remedio provisional de hacer y no hacer, así como varias excepciones al requisito de fianza previa.
A diferencia de lo que concluye la mayoría de este Tribunal, el remedio principal del injunction en un caso para hacer valer una servidumbre en equidad no es de natura-leza ordinaria, pues esa figura del derecho de la propiedad tiene su origen sustantivo en el derecho angloamericano y *354 surge en nuestro ordenamiento de los criterios extraordi-narios de la equidad que se derivan y regulan por mandato expreso de la Ley de Injunction de 1906, y hoy también por la Regla 57 de Procedimiento Civil. Véase Glines et al. v. Matta et al., supra. La acción para vindicar las servidum-bres en equidad o condiciones restrictivas sobre la propie-dad no emana del Código Civil de Puerto Rico, sino de nuestra jurisprudencia y del recurso extraordinario del injunction ante la ausencia de un remedio adecuado en el derecho civil para tales efectos. Véase M.J. Godreau y A.I. García Saúl, Servidumbres y Conservación, 67 (Núm. 2) Rev. Jur. U.P.R. 249, 301-302 (1998).(7) Asimismo, el profe-sor Michel Godreau señala que este Tribunal ha adoptado y reconocido todas las defensas que le otorgan los princi-pios en equidad a un demandado para oponerse al recurso de injunction en casos como el que nos ocupa. Id., págs. 303-304.(8) Por lo tanto, resulta sorprendente que cons-ciente de la dicotomía histórica antes mencionada, hoy el Tribunal de un plumazo haga una fusión de dos remedios provisionales disímiles e incompatibles en el ordenamiento procesal vigente de la actualidad.
B. Por otro lado, la flexibilización jurisprudencial que exime al demandante de probar daños concretos o perjui-cios sustanciales para que proceda el “injunction” perma-nente ante una servidumbre en equidad, no releva a la parte demandante de probar un daño irreparable, pues la *355 violación misma a la condición restrictiva satisface a ple-nitud el mencionado criterio. La propia opinión mayoritaria reconoce que el requisito de daño irreparable no es un elemento independiente de una acción de injunction permanente, sino que sirve de medio para establecer la ausencia de un remedio adecuado en ley. Opinión mayo-ritaria, pág. 320 esc. 11, citando a HA Wright, Miller and Kane Federal Practice and Procedure: Civil 2d, Sec. 2944, págs. 93-94 (1995).
Claramente, el criterio de daño irreparable no tiene que ser de carácter especial o económico para que se justifique el remedio extraordinario del injunction al amparo de la Regla 57. Todo lo contrario, al discutir la figura del injunction como un remedio extraordinario aún “atado a su abo-lengo de equidad”, hemos expresado que “[c]uando existe el remedio de resarcimiento de daños [es decir, daños concre-tos y cuantificables], y los hechos alegados en la demanda ... no excluyen de un todo la adecuacidad de ese recurso de vía ordinaria, no debe acudirse a este remedio inter-locutorio”. A.P.P.R. v. Tribunal Superior, supra, pág. 908. Asimismo, desde la vigencia de la Ley de Injunction de 1906 hemos esbozado que un daño irreparable es un daño que “no puede ser ampliamente compensado en una acción por daños y perjuicios”. González v. Collazo, 14 D.RR. 855, 859 (1908). Véase, además, Hernández Colón, op. cit., Sec. 5705, pág. 466.
Un “injunction” para hacer valer una servidumbre en equidad, sea preliminar o permanente, trata precisamente de un recurso extraordinario al que se acude necesaria-mente por no existir un remedio adecuado en daños ni bajo ninguna disposición del Código Civil. De acuerdo con ello, en ocasiones anteriores hemos considerado el criterio de daño irreparable al examinar la concesión de un injunction para vindicar una servidumbre en equidad. Véase Rodríguez et al. v. Gómez et al., 156 D.P.R. 307 (2002). Además, tanto nuestros pronunciamientos en P.R. Telephone Co. v. Tribunal Superior, supra, como los comentaristas del desa- *356 rrollo histórico del injunction, discuten el requisito de pro-bar un daño irreparable como equivalente o, en la alternativa, probar la ausencia de un remedio adecuado en ley.(9) Véanse: Rivé Rivera, op. cit., págs. 21-35; O. Fiss, The Civil Rights Injunction, Bloomington, Indiana University Press, 1978. En efecto, constituyen dos formulaciones del mismo criterio a la hora de conceder un injunction preliminar. Del mismo modo, este Tribunal ha aclarado que el concepto de evitación de daños irreparables tan sólo constituye un aspecto de la regla básica de que procede el injunction siempre que el remedio existente en el curso ordinario de la ley sea inadecuado. Cruz v. Ortiz, 74 D.P.R. 321, 328 (1953).
En pleitos incoados para hacer valer una servidumbre en equidad no existe otro curso adecuado en la ley ni remedio ordinario que no sea un injunction al amparo de la Regla 57, pues la existencia de este derecho real se des-prende, directa y precisamente, de los criterios extraordi-narios del injunction. La posibilidad de obtener un injunction permanente no constituye un remedio ordinario que tenga el efecto de excluir la aplicación de la Regla 57 para el injunction preliminar en este caso, pues de lo contrario sé estaría llegando a la conclusión contraintuitiva de que nunca puede haber un injunction preliminar al amparo de la Regla 57 si existe una posibilidad de eventualmente bb- *357 tener el remedio del injunction permanente para los mis-mos propósitos de vindicar las condiciones restrictivas.
A la luz de lo anterior, entendemos que tampoco existe justificación alguna para que el criterio de “dañó irreparable”.se interprete , y aplique con una rigidez que tenga el efecto de privar al demandado de las garantías procesales que provee la Regla 57. Los criterios antes mencionados, incluyendo el de daño irreparable, son directrices para guiar el tribunal al momento de evaluar si la prueba pre-sentada al solicitar el injunction preliminar lo justifica. Rivé Rivera, op. cit, pág. 23. (10) Tales requisitos extraordi-narios se deben evaluar a la luz de la totalidad de las cir-cunstancias particulares del caso, y ningún factor debe te-ner el efecto de reprimir la aplicación de la Regla 57 y la Ley de Injunction de 1906 en beneficio de las partes, mu-cho menos cuando el injunction es el remedio principal y extraordinario solicitado por la parte demandante.
Por lo tanto, discrepamos de la determinación de la ma-yoría de que el injunction permanente está disponible en este caso como un remedio ordinario. Dicha conclusión pa-rece ser un subterfugio para forzar la aplicación de. la Re-gla 56 en el caso de epígrafe y así eximir a la Asociación de Vecinos de prestar la fianza previa correspondiente. A su vez, tal interpretación es claramente incompatible con nuestro ordenamiento procesal, pues el injunction para vindicar la servidumbre en equidad siempre se ha conside-rado como un recurso extraordinario desde que se adoptó en nuestro ordenamiento en 1913 y desde su génesis en las Cortes de Equidad de Inglaterra del siglo diecinueve. Véase Godreau y García Saúl, supra, pág. 290.
Más aún, el requisito de fianza previa que establece la Regla 57 no es una exigencia trivial del sistema procesal *358 puertorriqueño. Éste es el único garante de que la Asocia-ción de Vecinos responderá por los daños ocasionados por el remedio extraordinario en caso de que no prevalezca al fi-nalizar el caso, en cumplimiento con la exigencia constitu-cional del debido proceso de ley que se activa por el interés propietario de la AFE sobre su solar. Al reinstalar el men-cionado injunction, la mayoría de esta Curia convalida una actuación judicial que rebasa la clara intención de la Asamblea Legislativa y del Tribunal manifestada en las Reglas de Procedimiento Civil y en la delimitación de los mencionados remedios provisionales. Además, dicha acción deja desprotegida a la AFE ante los posibles daños ocasio-nados por la paralización de la obra, lo que se agrava ante la realidad de que la parte demandante es una Asociación de Vecinos incorporada ad hoc para presentar la demanda en este caso, la cual carece de bienes para resarcir a la AFE en caso de no prevalecer en el injunction permanente. En vista de ello, entendemos que el foro de instancia abusó de su discreción en clara violación al debido proceso de ley de la AFE, por lo cual no debe sostenerse la orden de injunction preliminar.
C. Por último, entendemos que aun si aplicara —se-gún el criterio de la mayoría— la Regla 56 al caso de autos, la situación de hechos ante nuestra consideración no cum-ple con ninguna de las excepciones establecidas en la refe-rida Regla 56.3, pues no se desprende de la servidumbre en equidad que estas condiciones sean exigibles contra la construcción de la AFE. También consideramos que —aun si procediera eximir la prestación de fianza previa al am-paro de una de las excepciones enumeradas en la Regla 56.3— el foro de instancia abusó de su discreción al conce-der un remedio provisional que afectaría el derecho propie-tario de los demandados sin celebrar una vista plenamente evidenciaría conforme al debido proceso de ley de la parte demandada. Véase nuestra opinión de conformidad en Asociación de Vecinos v. AFE, supra.
*359 De acuerdo con nuestros pronunciamientos en Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, una medida provisional para asegurar la efectividad de una sentencia en un procedimiento al amparo de la Regla 56 exige la celebración de una vista para salvaguardar el derecho constitucional al debido proceso de ley, la cual no se celebró en el presente caso conforme a las exigencias de la referida cláusula constitucional. ¿Puede la mayoría avalar, en este caso, la aplicación de la Regla 56 de la forma y manera en que este Tribunal expresó en Rivera Rodríguez & Co. v. Lee Stowell, etc. que era inconstitucional? Contestamos en la negativa.
El interés propietario que tutela la Constitución y que cualificamos en Rivera Rodríguez & Co. v. Lee Stowell, etc. a la luz de la Regla 56 requiere que se le otorgue a un individuo con un interés protegido el derecho a\ (1) una notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) contrain-terrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado, y (6) a que la decisión se base en el expediente. Por lo tanto, cualquier medida en aseguramiento de sentencia que atente contra este derecho debe cumplir cabalmente con dichas exigen-cias del debido proceso de ley.
En el caso de autos, se desprende del expediente que la AFE —el titular de la propiedad en controversia— obtuvo todos los permisos correspondientes antes de iniciar la obra de construcción. Por lo tanto, es menester concluir que la AFE goza de un interés propietario que sólo podría ser restringido conforme a los criterios constitucionales que exige el debido proceso de ley, en cumplimiento con su aplicación particular a la Regla 56, según establecimos en Rivera Rodríguez & Co. v. Lee Stowell, etc., supra.
Claramente, el tribunal de instancia abusó de su discre-ción al limitar el carácter de la prueba presentada en la vista y al no permitir la presentación de prueba testifical. *360 El foro de instancia basó su determinación de conceder el injunction en el carácter atípico de la estructura, lo cual hubiera precisado prueba sobre al menos una muestra de las demás residencias y sobre la defensa de extinción le-vantada por la AFE. Debemos tener en cuenta que la AFE presentó como defensa la incuria de la Asociación de Veci-nos, alegando hechos constitutivos de ese tipo de defensa. No obstante, dada la ausencia de una vista plenamente evidenciaría que cumpliera con las exigencias constitucio-nales esbozadas en la citada Rivera Rodríguez & Co. v. Lee Stowell, etc., la AFE no pudo presentar prueba a tales efectos. Es menester concluir, por lo tanto, que la concesión del injunction preliminar —que la mayoría de este Tribunal reinstala como un remedio provisional de sentencia al amparo de la Regla 56— incidió en el derecho propietario de los demandados, privándolos del disfrute de su propie-dad sin rma determinación en los méritos y por un tiempo indeterminado, en patente violación al debido proceso de ley.
V
Por los fundamentos que anteceden, confirmaríamos el dictamen del foro apelativo y no reinstalaríamos la orden. de injunction preliminar emitida por el tribunal de instancia. Enterados de que no se celebró una vista con-forme al debido proceso de ley, y a la luz de que la Regla 57 de Procedimiento Civil, supra, cláramente no permite que se emita un injunction sin una fianza previa, lo que proce-día era dejar sin efecto su dictamen. Sin embargo, la deci-sión tomada hoy por este Tribunal de reinstalar el injunction sin una fianza correspondiente y sin celebrar una vista plenamente evidenciaría, cambia el estado de dere-cho en cuanto al injunction y los remedios provisionales, con el único propósito de ratificar una actuación del foro de instancia contraria a nuestro ordenamiento procesal y en *361 clara violación a los principios más elementales del debido proceso de ley.
Por ende, disentimos respetuosamente del curso de ac-ción seguido por la mayoría.

 Véase J.H. Merryman, The Civil Law Tradition, Stanford University Press, 1969, págs. 57, 130, citado en D. Rivé Rivera, Recursos Extraordinarios, 2da ed., San Juan, Facultad de Derecho U.I.P.R., 1996, pág. 8. De hecho, la dicotomía entre el derecho y la equidad (en el sentido anglosajón del “common law”) siempre ha sido ajena a nuestro sistema de derecho, pero ha influenciado nuestra jurisprudencia y nuestras leyes en cuanto a la figura del injunction. Véase Montilla v. Van Syckel et al., 8 D.P.R. 160, 194 (1905).

 Ello, dado que en Puerto Rico hemos ido adoptando progresivamente el sis-tema procesal civil norteamericano. Guzmán, Juarbe v. Vaquería Tres Monjitas, 169 D.P.R. 705 (2006).

 Cabe señalar que en la actualidad nos encontramos ante un proceso similar, pues en septiembre de 2005 nombramos un Comité Asesor Permanente de Reglas de Procedimiento Civil para revisar el esquema procesal vigente. Este nos sometió un Informe y un proyecto de reglas en la Conferencia Judicial celebrada en febrero de 2008 que recomienda mantener la dicotomía histórica entre los remedios provisiona-les de la Regla 56 y el injunction como remedio extraordinario bajo la Regla 57. Proyecto de Reglas de Procedimiento Civil, marzo de 2008, págs. 119 y 121-122.

 A su vez, cabe resaltar que la actuación de este Tribunal al no acoger plena-mente las recomendaciones del Comité para eliminar la mencionada dicotomía entre el injunction y los demás remedios provisionales ha sido objeto de críticas por parte de algunos comentaristas. Véase Rivé Rivera, op. cit, págs. 13-15.

 De hecho, en el Informe y proyecto de reglas que nos sometió el Comité Asesor Permanente de Reglas de Procedimiento Civil en febrero de 2008 se reco-mienda incorporar expresamente los mencionados criterios extraordinarios de P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975), a la Regla 57. Véase Informe de Reglas de Procedimiento Civil, diciembre de 2008, págs. .674-675.

 Además, es menester señalar que estos enfoques diferentes en cuanto a la fianza y las mencionadas figuras se originaron cuando comenzó la dicotomía entre el injunction y los remedios provisionales ordinarios a principios del siglo veinte. El Art. 7 de la Ley de Injunction de 1906 establece que “[n]o se librará auto de interdicto prohibitorio o entredicho, mientras el peticionario o demandante no haya constituido fianza garantizada por dos fiadores, cuya cuantía y suficiencia de garantía fijará el tribunal que haya de librar el auto de interdicto o mandamiento”. Por otro lado, el Art. 4 de la Ley Para Asegurar la Efectividad de Sentencias de 1902 disponía que “[s]i consta claramente en documento auténtico que la obligación es exigible, el tribunal decretará el aseguramiento sin fianza. En cualquier otro caso, exigirá fianza para decretarlo ...”. Claramente, la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, no alteró para nada la diferenciación contundente en cuanto a la flexibilidad contrastante del requisito de fianza entre ambas figuras procesales. La Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. III, al igual que la Ley de Injunction de 1906, no admite excepción al requisito de fianza previa.

 De hecho, este Tribunal ha expresado que las servidumbres en equidad han ido evolucionando “hasta encontrarla hoy con sustantividad propia, pero siempre conservando la independencia que le presta su origen y procedencia de un ordena-miento foráneo”. (Énfasis suplido.) Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 352 (1986), citando a J. Vélez Torres, Curso de Derecho Civil, San Juan, Ed. Art Printing, 1983, T. II, pág. 416. Sobre este asunto, José Vélez Torres también ha comentado que esta figura de los derechos reales existe en nuestro ordenamiento “por vía de adopción, con vida y sustantividad propias que le permiten desenvolverse al margen de la existencia de nuestro Código Civil”. Id., pág. 444.

 Entre tales defensas derivadas del derecho común y de la equidad anglo-sajona encontramos: (1) el consentimiento (acquiescence); (2) la consciencia impura (unclean hands)', (3) la incuria {laches), y (4) el impedimento (estoppel). Colón v. San Patricio Corporation, 81 D.P.R. 242, 253-254 (1959); M.J. Godreau y A.I. García Saúl, Servidumbre y Conservación, 67 (Núm. 2) Rev. Jur. U.P.R. 249, 303-304 (1998).

 En un artículo influyente sobre este tema, el profesor Douglas Laylock aclara lo siguiente sobre la confusión histórica entre el requisito de daño irreparable y de falta de un remedio adecuado en ley,' que en efecto constituyen dos formulaciones del mismo criterio:
“... the verbal formulation of the irreparable injury rule has tended to exaggerate the true, extent of the-preference for legal remedies.
“In the first place, the rule has two formulations, and this occasionally causes a judge to think there are two requirements: that there be no adequate remedy at law and that the injury be irreparable. This misunderstanding in turn leads to the suggestion that the injury itself must have some special quality -perhaps that it be especially egregiouswhen ‘irreparable injury’ should mean simply injury that cannot be repaired (remedied) at law. Thus, even a relatively insignificant injury is irreparable if it cannot be measured in money.” (Escolios omitidos y énfasis suplido.) D. Laylock, Injunctions and the Irreparable Injury Rule, 57 (Núm. 6) Texas L. Rev. 1065 (1979). •

 Para una discusión más extensa sobre la amplitud y flexibilidad del criterio de daño irreparable, véanse: W. Williamson Kerr, A treatise on the Law and Practice of Injunctions in Equity, London, William Maxwell and Son, 1867, págs. 199-200; J. Leubsdorf, The Standard for Preliminary Injunctions, 91 (Núm. 3) Harv. L. Rev. 525, 551-552 (1978).